

**RECEIVED**
CLERK, U.S. DISTRICT COURT

1/14/22

CENTRAL DISTRICT OF CALIFORNIA
BY: _____MAT_____ DEPUTY

# United States Court of Appeals for the Federal Circuit

---

**EVOLUSION CONCEPTS, INC.,**
*Plaintiff-Appellant*

v.

**HOC EVENTS, INC., DBA SUPERTOOL USA,**
*Defendant*

---

2021-1963

---

Appeal from the United States District Court for the Central District of California in No. 2:19-cv-02736-JLS-DFM, Judge Josephine L. Staton.

-------------------------------------------------

**EVOLUSION CONCEPTS, INC.,**
*Plaintiff-Appellant*

v.

**JUGGERNAUT TACTICAL, INC.,**
*Defendant-Appellee*

---

2021-1987

---

2   EVOLUSION CONCEPTS, INC. v. HOC EVENTS, INC.

Appeal from the United States District Court for the Central District of California in No. 8:18-cv-01378-JLS-DFM, Judge Josephine L. Staton.

———————————————

Decided: January 14, 2022

———————————————

ALLEN MARCEL SOKAL, Insigne PC, Carlsbad, CA, argued for plaintiff-appellant. Also represented by TREVOR CODDINGTON; DONNY SAMPORNA, Haley Guiliano LLP, San Jose, CA.

BOBBY BRAXTON, Braxton Perrone PLLC, Frisco, TX, argued for defendant-appellee. Also represented by GREGORY PERRONE.

———————————————

Before PROST, TARANTO, and CHEN, *Circuit Judges*.

TARANTO, *Circuit Judge*.

Evolusion Concepts, Inc. owns U.S. Patent No. 8,756,845, titled "Method and Device for Converting Firearm with Detachable Magazine to a Firearm with Fixed Magazine." In the main case before us, Evolusion sued Juggernaut Tactical, Inc. in the Central District of California, alleging infringement of claims 1–3 and 8–10 of the '845 patent. On the parties' cross-motions for summary judgment regarding infringement, the district court granted Juggernaut summary judgment of non-infringement. *Evolusion Concepts, Inc. v. Juggernaut Tactical, Inc.*, No. 8:18-cv-01378, 2021 U.S. Dist. LEXIS 77792, at *27 (C.D. Cal. Apr. 5, 2020) (*Juggernaut Decision*). The court's key ruling was that the term "magazine catch bar" in the asserted claims of the '845 patent excludes a factory-installed magazine catch bar. *Id.* at *13–22. That claim construction concededly precludes literal infringement, the court held, because Juggernaut's products use the factory-

EVOLUSION CONCEPTS, INC. v. HOC EVENTS, INC.   3

installed magazine catch bar. *Id.* at *22–23. The court also determined that Juggernaut does not infringe under the doctrine of equivalents. *Id.* at *23–26.

On Evolusion's appeal, we hold that the term "magazine catch bar" in the asserted claims includes a factory-installed magazine catch bar. We therefore reverse the grant of summary judgment of non-infringement, reverse the denial of summary judgment of direct infringement as to the independent claims 1 and 8, and remand for further proceedings in Appeal No. 21-1987, which is the appeal in the *Juggernaut* case. We also vacate and remand in Appeal No. 21-1963, which involves a separate, related case, discussed near the end of this opinion.

I

A

The '845 patent describes a device and method for converting a semi-automatic rifle with a detachable magazine to one with a fixed magazine. '845 patent, col. 2, lines 3–5. A detachable magazine allows a user to fire the weapon until the magazine is depleted, then simply release the magazine, insert a new magazine, and resume firing. *Id.*, col. 1, lines 22–27. A fixed magazine, in contrast, can be removed and replaced only by disassembling certain non-magazine parts of the firearm, slowing the rate of fire. *Id.*, col. 1, lines 50–53; col. 2, lines 20–28. The specification explains that firearms with detachable magazines are likely to face increased legal restrictions. *Id.*, col. 1, lines 63–64. In particular, the specification notes the introduction in Congress of a bill to enact the Assault Weapons Ban of 2013, which would have banned semi-automatic weapons with detachable magazines. *Id.*, col. 1, lines 30–59.

The patent describes a "standard OEM [original equipment manufacturer] semi-automatic rifle" as having a "magazine catch assembly" containing several components. *Id.*, col. 2, lines 35–53. It then describes "[t]he invention"

as a "permanent fixture added to a semi-automatic firearm by removing the standard OEM magazine catch assembly and installing the invention." *Id.*, col. 2, lines 55–58. At least in "one aspect of the present invention," the resulting firearm contains "a lower receiver, a magazine catch bar, and an upper tension bar." *Id.*, col. 2, lines 65–67. The magazine catch bar can be attached to the lower receiver of the firearm and fit within a recess of the magazine well. *Id.*, col. 2, line 67, through col. 3, line 2. The upper tension bar on the lower receiver applies pressure against the firearm's upper receiver, rendering the magazine catch bar immovable. *Id.*, col. 3, lines 2–6. The magazine can be released only when the upper receiver is separated from the lower receiver. *Id.*, col. 4, line 64, through col. 5, line 4; *id.*, figs. 1 & 2. The specification also discusses a method of installing the invention, comprising removing the entire factory-installed magazine release button assembly, installing a magazine catch bar onto the lower receiver, and installing an upper tension bar onto the lower receiver. *Id.*, col. 3, lines 48–65.

The '845 patent has three independent claims. These claims are:

> 1. A firearm with a fixed magazine comprising
>
> a lower receiver having a magazine well configured to receive a magazine with a side-locking recess with a recess in the magazine well
>
> a *magazine catch bar* securely attached to the firearm, said magazine catch bar resting within the magazine side-locking recess
>
> an upper tension bar which extends towards and contacts the upper receiver.
>
> 8. A device for converting a firearm with a detachable magazine into a firearm with a fixed magazine comprising

EVOLUSION CONCEPTS, INC. v. HOC EVENTS, INC.     5

> A *magazine catch bar* securely attached to the lower receiver of said firearm, said magazine catch bar resting within the magazine side-locking recess
>
> An upper tension bar which extends towards and contacts the upper receiver.
>
> 15. A method for converting a firearm with a detachable magazine into a firearm with a fixed magazine comprising
>
> Removing the factory installed magazine release button assembly
>
> Said removal comprising the steps of
>
> depressing the magazine release button to a sufficient depth to permit the *factory installed magazine catch bar* to extend beyond the magazine well of the lower receiver,
>
> rotating the *factory installed magazine catch bar* in a counterclockwise fashion until the *factory installed magazine catch bar* is unthreaded from the factory installed screw end of the magazine release button,
>
> removing all parts of the factory installed magazine release button assembly
>
> Installing a *magazine catch bar* to the lower receiver of the firearm, said magazine catch bar resting within the magazine side-locking recess
>
> Installing an upper tension bar to the lower receiver of the firearm, said upper tension bar extending towards and contacting the upper receiver.

*Id.*, col. 7, lines 27–35; col. 8, lines 4–10; col. 8, lines 47–67 (emphases added).

B

In August 2018, Evolusion sued Juggernaut for infringement of claims 1, 8, and 15 of the '845 patent based on Juggernaut's manufacture and sale of its "Hellfighter Mod Kits," which convert a firearm with a detachable magazine into a firearm with a fixed magazine. Juggernaut asserted invalidity as an affirmative defense and filed a counterclaim for a declaratory judgment limited to non-infringement. Subsequently, Evolusion dropped its assertion of method claim 15 and added assertions of infringement of dependent claims 2–3 and 9–10 (apparatus claims). In claim-construction proceedings from May to July 2019, the only phrase for which the parties sought a construction was "upper tension bar," but the court decided that no construction was needed.

Evolusion then sought summary judgment of direct infringement, as well as induced and contributory infringement, of claims 1–3 and 8–10. Juggernaut, for its part, moved for summary judgment of non-infringement. At that time, construction of the term "magazine catch bar" became necessary, because in Juggernaut's products the factory-installed magazine catch bar is retained in the conversion of a firearm to one with a fixed magazine. The parties agreed that whether Juggernaut infringes independent claims 1 and 8 "depends entirely on" whether the claim phrase "magazine catch bar" includes a factory-installed (OEM) magazine catch bar. *Juggernaut Decision* at \*7.

The district court concluded that the term "magazine catch bar," as used in the claims and specification, excludes an OEM magazine catch bar. *Id.* at \*16–17. The court based its determination primarily on the sentence in the specification that states: "The invention is a permanent fixture added to a semi-automatic firearm by removing the standard OEM magazine catch assembly and installing the invention." '845 patent, col. 2, lines 55–58. Because the

OEM magazine catch bar is one of the components removed to install "the invention," the court determined that the "magazine catch bar" of the invention cannot be an OEM magazine catch bar. *Juggernaut Decision* at *17. The court also reasoned that the language of unasserted claim 15 supports its construction. Because claim 15 requires removing "the factory installed magazine catch bar" and then installing "a magazine catch bar," the court concluded that the magazine catch bar that is installed must be "separate and distinct from the factory-installed magazine catch bar"; otherwise, "factory-installed" would be superfluous. *Id.* at *20–22. And because a term that appears in multiple claims should be given the same meaning in all those claims, the court held that the term "magazine catch bar" in claims 1 and 8 similarly must exclude a factory-installed magazine catch bar. *Id.* at *21. Under that construction, as noted, Juggernaut does not literally infringe independent claims 1 and 8. *Id.* at *22.

The court proceeded to rule that, under the construction it had adopted, Juggernaut cannot infringe under the doctrine of equivalents. It reasoned that, by disclosing but not claiming a factory-installed magazine catch bar, Evolusion had dedicated a factory-installed magazine catch bar to the public. *Id.* at *25. It added that, because the terms "magazine catch bar" and "factory-installed magazine catch bar" are separately identified in the '845 patent, the magazine catch bar of the claims cannot be an insubstantial alteration of a factory-installed magazine catch bar. *Id.* at *25–26.

The court went on to explain that, because Juggernaut does not directly infringe claims 1 and 8, it does not directly infringe the other asserted claims, all dependent on claim 1 or claim 8; that, if there is no direct infringement, Juggernaut also does not indirectly infringe any asserted claims; and, finally, that the affirmative defense of invalidity need not be considered. *Id.* at *26–28. None of those

rulings are disputed on appeal. The district court entered a final judgment of non-infringement in April 2021.

Evolusion timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).[1]

## II

We begin with the claim-construction issue presented respecting claims 1 and 8. Claim construction is ultimately a question of law, decided de novo on review, as are the intrinsic-evidence aspects of a claim-construction analysis. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331 (2015). The district court relied for its claim construction in *Juggernaut* only on intrinsic evidence from the specification, *see Juggernaut Decision* at *16–22, and we therefore review the construction de novo. The question is whether the term "magazine catch bar" in the asserted claims includes a factory-installed magazine catch bar.

"[T]he words of a claim 'are generally given their ordinary and customary meaning,'" as understood by a relevant artisan at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc) (citations omitted). A relevant artisan is not deemed to read a term in a vacuum, but instead "is deemed to read the claim term . . . in the context of the particular claim in which the disputed term appears," and "in the context of the entire patent, including the specification." *Id.* at 1313. And because

---

[1] On October 26, 2021, the district court issued an order granting attorney's fees to Juggernaut as a "prevailing party" under 35 U.S.C. § 285. On November 24, 2021, the court issued an amended final judgment incorporating the award of attorney's fees. On December 3, 2021, Evolusion filed an amended notice of appeal to include, in this appeal, the district court's final judgment granting attorney's fees to Juggernaut. Juggernaut has not objected to inclusion of that order in this appeal.

"claim terms are normally used consistently throughout the patent," other claims of the patent, both asserted and unasserted, can provide insight into the meaning of a claim term. *Id.* at 1314; *see also In re Varma*, 816 F.3d 1353, 1363 (Fed. Cir. 2016) ("[T]he principle that the same phrase in different claims of the same patent should have the same meaning is a strong one, overcome only if 'it is clear' that the same phrase has different meanings in different claims." (citation omitted)).

Independent claims 1 and 8 claim a firearm and a device, respectively, that contain "a magazine catch bar," which is securely attached to the firearm and sits within the recess of the lower receiver. '845 patent, col. 7, lines 27–35; col. 8, lines 4–10. Nothing in the language of claims 1 and 8 limits the scope of the generic term "magazine catch bar" to exclude one that was factory installed—specifically, as Juggernaut asserts, factory installed as part of an original firearm with a detachable magazine. Nor does Juggernaut assert that either the ordinary meaning of the phrase itself, or any other language in these claims, points to such a restriction based on provenance.

Juggernaut instead relies on unasserted claim 15, which, it argues, informs the meaning of "magazine catch bar" in claims 1 and 8 and precludes adopting the ordinary meaning of "magazine catch bar." Juggernaut is correct that the meaning of the term in claims 1 and 8 could well be informed by a meaning of the term made sufficiently clear in claim 15. *See Phillips*, 415 F.3d at 1314. But Juggernaut is incorrect that the use of "magazine catch bar" in claim 15 narrows the meaning of the term to support the urged exclusion of factory-installed magazine catch bars.

Independent claim 15 claims a method of removing the factory-installed magazine release button assembly and installing a new device. The claim's first step requires "removing *all parts* of the factory installed magazine release button assembly." '845 patent, col. 8, lines 47–67

(emphasis added). One of the components of that assembly is "the factory installed magazine catch bar." *Id.* The next steps involve installing two components: an upper tension bar and "a magazine catch bar." *Id.* The invention thus involves removing and installing *assemblies* of parts—not *only* magazine catch bars. An instruction that identifies the removed assembly as including a factory-installed magazine catch bar, which focuses the process on conversion of what came from a factory, does not imply any preclusion of reuse of the same bar as one part of the assembly being installed in place of the removed assembly. The ordinary meaning of the claim language allows the factory-installed magazine catch bar to be removed as part of the initial assembly removal and reused as part of the assembly installed in a later step.

Accepting Juggernaut's position would amount to reading additional limitations into claim 15 not required by its language. Claim 15 requires only "removing" a specific type of magazine catch bar (the one installed by the manufacturer) and then installing "*a* magazine catch bar." *Id.* (emphasis added). It does not require, as a removal step, "discarding" the OEM catch bar. Nor does it require installing a "new" or "different" magazine catch bar. Juggernaut argues that the use of "a" before "magazine catch bar," instead of antecedent-basis language such as "said" or "the," means that the two magazine catch bars must be different. The use of antecedent-basis language like "said" or "the," however, would have narrowed the term to cover *only* a factory installed magazine catch bar, and neither party advances that construction. The inventors, in the independent claims, did not choose to claim a device with a "new" or "different" magazine catch bar, but instead a device with "*a* magazine catch bar," which, by its ordinary meaning, could be either the removed catch bar or a new or different catch bar.

The specification supports the ordinary-meaning interpretation of "magazine catch bar." *Phillips,* 415 F.3d at

1315 ("[C]laims must be read in view of the specification, of which they are part." (internal quotation marks and citation omitted)). The specification nowhere limits the scope of a "magazine catch bar" to exclude factory-installed ones from the assembly that achieves the fixed-magazine goal. Nor, contrary to a suggestion made by Juggernaut, does it explain that only a customized or modified magazine catch bar, one necessarily different from what was factory installed, may be used on the firearm. It simply explains that the described embodiments of the invention all include a "magazine catch bar" that can be securely attached to the lower receiver of the firearm, and consistently describes the component in generic terms. *Id.*, col. 2, line 65, through col. 3, line 2; *see also id.*, col. 5, lines 5–7.

Juggernaut argues, and Evolusion concedes, that the disclosed embodiments do not illustrate OEM magazine catch bars. *See id.*, figs. 3 & 4. But that cannot make a difference in this case. We have repeatedly held that "it is not enough that the only embodiments, or all of the embodiments, contain a particular limitation to limit claims beyond their plain meaning." *Unwired Planet, LLC v. Apple, Inc.*, 829 F.3d 1353, 1359 (Fed. Cir. 2016) (internal quotation marks and citation omitted). Here, nothing in the specification suggests that factory (or OEM) provenance of a bar disqualifies it from being part of the invention if, as a structural matter, it is a magazine catch bar under the ordinary meaning. And nothing in the specification suggests that factory (or OEM) installation precludes the possession of the structural features required by the invention. The specification reiterates the background principle that the claims are not limited to the illustrated embodiments. '845 patent, col. 4, lines 46–53. And it describes and illustrates at least one embodiment in which the magazine catch bar is a separate element from the upper tension bar, *id.*, col. 5, lines 5–10, 17–20; *id.*, fig. 3, reinforcing the idea that there is no requirement to replace each individual

component in the assembly in order to replace the assembly as a whole.

The district court relied primarily on one sentence of the specification to conclude that the specification excludes a factory-installed magazine catch bar: "The invention is a permanent fixture added to a semi-automatic firearm by removing the standard OEM magazine catch assembly and installing the invention." '845 patent, col. 2, lines 55–58. But that statement has the same character as what is found in claim 15. For the reasons already discussed with respect to claim 15, the specification sentence does not preclude the installation of a factory-installed magazine catch bar.

Finally, Juggernaut argues that the patent is "abundantly clear" that the invention cannot function with the OEM magazine catch assembly. Juggernaut's Opening Br. at 8. But Juggernaut fails to cite to any portion of the specification that supports this operability assertion.

We thus construe the term "magazine catch bar" according to its ordinary meaning, which includes a factory-installed magazine catch bar. This construction not only requires reversal of the grant of summary judgment to Juggernaut—all parts of which relied on the claim construction we have held to be incorrect as a matter of law. It also requires reversal of the denial of summary judgment of infringement to Evolusion as to claims 1 and 8, because the parties have agreed that direct infringement of claims 1 and 8 is established if the term "magazine catch bar" is construed to include a factory-installed magazine catch bar. Oral Arg. at 29:55–30:15 (Juggernaut's counsel conceding that the "sole issue" of literal infringement of claim 1 and 8 is the construction of "magazine catch bar"); *see also Juggernaut Decision* at \*7. There is no such agreement about the dependent claims, which must be reconsidered on remand, along with any issues in the case about indirect infringement or the affirmative defense of invalidity. The

district court's determination that it need not reach those issues depended on its conclusions we reverse here.

We reverse the court's grant of summary judgment of no infringement, reverse the court's denial of summary judgment of infringement of claims 1 and 8, and remand for the district court to address the other asserted claims. Because we reverse the court's determination of literal infringement, we need not reach the court's determination of infringement under the doctrine of equivalents. We vacate the award of attorney's fees because Juggernaut is no longer a prevailing party, a status required to receive a fee award under 35 U.S.C. § 285.

## III

Appeal No. 21-1963 involves a separate infringement action brought by Evolusion against HOC Events, Inc., dba Supertool USA, alleging infringement of both product and method claims of the '845 patent. When HOC failed to respond to the complaint, the clerk of the district court entered a "default" under Federal Rule of Civil Procedure 55(a). With the requests for relief not yet adjudicated, Evolusion moved for a "default judgment" under Rule 55(b), but the court denied the motion. In its denial, the court, citing its ruling in the *Juggernaut* case, stated that Evolusion failed to state a viable claim for infringement against HOC, because HOC's products require reusing the factory-installed magazine catch bar. *Evolusion Concepts, Inc. v. HOC Events, Inc.*, No. 2:19-cv-02736, 2021 WL 2007068 (C.D. Cal. Apr. 14, 2021). Evolusion noticed an appeal from the April 14 order. HOC has not appeared on appeal.

The April 14 order on its face merely denies Evolusion a judgment in its favor; it does not order any judgment against Evolusion, let alone a final judgment. Nor is the clerk-entered Rule 55(a) "default" a final judgment against Evolusion. *See* 15A C. Wright & A. Miller, Federal Practice and Procedure § 3914.5 & nn.1.50 & 2 (2d ed.). But, although Evolusion has not addressed the jurisdictional

finality problem raised by those facts, we think it proper to treat the April 14 order as a final judgment. The order declares that Evolusion has no claim it can pursue, and in light of that declaration there was evidently nothing left to do in the litigation in district court after the April 14 order. Indeed, the clerk notified the Patent and Trademark Office of termination of the case on the same date, and the court's official electronic docket records the case as closed. In these circumstances, we treat the April 14 order as a final judgment, which we have jurisdiction to review under 28 U.S.C. § 1295(a)(1). For the reasons set forth in our discussion of the *Juggernaut* case, we vacate the April 14 order in the HOC case and remand for further proceedings consistent with this opinion.

IV

For the foregoing reasons, we reverse the entry of summary judgment of non-infringement, reverse the denial of summary judgment of direct infringement as to claims 1 and 8, vacate the award of attorney's fees, and remand for further proceedings consistent with our claim construction in Appeal No. 21-1987. We vacate and remand in Appeal No. 21-1963.

The parties shall bear their own costs.

**REVERSED IN PART, VACATED IN PART, AND REMANDED**