Uleses C. Henderson, Jr. (Bar No. 225246)
Email: uhenderson@onellp.com
**ONE LLP**
23 Corporate Plaza, Suite 150-105
Newport Beach, CA 92660
Telephone: (310) 866-5157
Facsimile: (310) 943-2085

Bobby W. Braxton (Admitted *Pro Hac Vice*)
Email: braxton@braxtonperrone.com
Gregory Perrone (Admitted *Pro Hac Vice*)
Email: perrone@braxtonperrone.com
**BRAXTON PERRONE, PLLC**
2201 Spinks Road, Suite 154
Flower Mound, TX 75022
Telephone: (469) 814-0032

Attorneys for Defendant/Counterclaimant,
JUGGERNAUT TACTICAL, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| EVOLUSION CONCEPTS, INC., a California corporation,<br><br>          Plaintiff,<br><br>     v.<br><br>JUGGERNAUT TACTICAL, INC., a California corporation; and DOES 1-10, inclusive,<br><br>          Defendants.<br><br>─────────────────────<br><br>AND RELATED COUNTERCLAIMS | Case No. 8:18-cv-01378-JLS-DFM<br>Hon. Josephine L. Staton<br><br>**JUGGERNAUT TACTICAL INC.'S OPENING CLAIM CONSTRUCTION BRIEF** |

# **TABLE OF CONTENTS**

I.    LAW APPLICABLE TO CLAIM CONSTRUCTION ..................................... 1

II.   MAGAZINE CATCH BAR ............................................................. 1

III.  UPPER TENSION BAR .............................................................. 6

IV.   BAR ................................................................................. 7

V.    MAGAZINE ......................................................................... 9

VI.   FIXED MAGAZINE ................................................................. 10

VII.  FIREARM ........................................................................... 12

VIII. DEVICE ............................................................................. 12

IX.   EXTERIOR .......................................................................... 13

X.    DEVICE FOR CONVERTING – 35 U.S.C. 112(f) ................................... 13

XI.   INDEFINITENESS UNDER 35 U.S.C. 112 ....................................... 15

      A.   The Asserted '845 Claims Lack Enablement ............................... 17

      B.   The Claims Fail the Written Description Requirement ..................... 21

XII.  CONCLUSION ...................................................................... 22

i

# TABLE OF AUTHORITIES

## Cases

*Ariad Pharms., Inc. v. Eli Lilly and Co.*,
598 F.3d 1336 (Fed. Cir. 2010) (*en banc*)................................................ 17

*Auto. Techs. Int'l, Inc. v. BMW of N. Am.*,
501 F.3d 1274 (Fed. Cir. 2007) ............................................................ 16

*Biosig Instruments, Inc. v. Nautilus, Inc.*,
783 F.3d 1374 (Fed. Cir. 2015) ............................................................ 15

*Columbia Ins. Co. v. Simpson Strong-Tie Co. Inc.*,
2023 U.S. App. LEXIS 7653, 2023 U.S.P.Q.2D (BNA) 397, 2023 WL 273342717

*Computer Docking Station Corp. v. Dell, Inc*,
519 F.3d 1366 (Fed. Cir. 2008) .............................................................. 9

*Dyfan, LLC. v. Target Corp.*
28 F.4th 1360 (Fed. Cir 2022) ............................................................ 13

*Genentech, Inc. v. Novo Nordisk, A/S*,
108 F.3d 1361 (Fed. Cir. 1997) ............................................................ 17

*Gutterglove, Inc. v. Am. Die & Rollforming, Inc.*,
2017 U.S. Dist. LEXIS 153362, 2017 WL 4124229 (E.D. Cal. 2017) ................ 10

*Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*,
22 F.4th 1369 (Fed. Cir. 2022) ............................................................. 1

*Liebel-Flarsheim Co. v. Medrad, Inc.*
358 F.3d 898 (Fed. Cir. 2004) ....................................................... 15, 16

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
481 F.3d 1371 (Fed. Cir. 2007) ............................................................ 16

*MagSil Corp. v. Hitachi Glob. Storage Techs., Inc.*,
687 F.3d 1377 (Fed. Cir. 2012) ...................................................... 16, 21

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc) ................................................. 1

*Purdue Pharma L.P. v. Endo Pharms., Inc.*,
438 F.3rd 1123, 1136 (Fed. Cir. 2006)..................................................... 1

**JUGGERNAUT TACTICAL INC.'S OPENING CLAIM CONSTRUCTION BRIEF**

*Spectrum Intern., Inc. v. Sterilite Corp.*,
    164 F.3d 1372 (Fed. Cir. 1998) ............................................................. 6

*Sport Dimension, Inc. v. Coleman Co.*,
    820 F.3d 1316 (Fed. Cir. 2016) ............................................................. 1

*Verizon Service Corp. v. Vonage Holdings Corp.*,
    503 F.3d 1295 (Fed. Cir. 2007) ....................................................... 9, 12

*In re Wands*,
    858 F.2d 731 (Fed. Cir. 1998) .................................................. 16, 20, 21

*Williamson v. Citrix Online, LLC*,
    792 F.3d 1339 (Fed. Cir. 2015) ........................................................... 14

## Statutes

35 U.S.C. 112 ........................................... 13, 14, 15, 16, 17, 18, 19, 22

## Other Authorities

Manual of Patent Examination Procedure 2181 ....................................... 14

**JUGGERNAUT TACTICAL INC.'S OPENING CLAIM CONSTRUCTION BRIEF**

## JUGGERNAUT'S EXHIBIT LIST

| Exhibit | Brief Description |
|---------|-------------------|
| 1001 | Patent Owner's Response to Office Action (First Reexamination) |
| 1002 | Notice of Intent to Issue (First Reexamination) |
| 1003 | Patent Owner's Response to Non-Final Office Action (Second Reexamination) |
| 1004 | Final Office Action (Second Reexamination) |
| 1005 | Notice of Intent to Issue (Second Reexamination) |
| 1006 | Reexamination Certificate (Second Reexamination) |
| 1007 | Non-Final Office Acton (First Reexamination) |
| 1008 | Examiner Interview Summary (Second Reexamination) |
| 1009 | US Patent No. 8,756,845 |
| 1010 | Excerpts from deposition of Inventor Courtney Harris |
| 1011 | American Heritage Dictionary 1980 |
| 1012 | American Heritage Dictionary 2012 |
| 1013 | Webster All in one 2013 |
| 1014 | Excerpts from deposition of Plaintiff's expert Dr. Batzer |
| 1015 | Declaration of Dr. Joshua Harrison |

Exhibits 1001-1014 are attached as exhibits to Henderson's Declaration.

JUGGERNAUT TACTICAL INC.'S OPENING CLAIM CONSTRUCTION BRIEF

# I.    LAW APPLICABLE TO CLAIM CONSTRUCTION

The CAFC has mandated that patent claim terms must be interpreted to have the meaning  a person of ordinary skill in the art ("POSITA") would ascribe to the term when read in the context of the claim, specification, and prosecution history, and consistent with what the inventors actually invented.  *Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*, 22 F.4th 1369, 1378 (Fed. Cir. 2022); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc).

A patentee can limit "the meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution." *Purdue Pharma L.P. v. Endo Pharms., Inc.*, 438 F.3rd 1123, 1136 (Fed. Cir. 2006). This can be done by "clearly characterizing the invention in a way to try to overcome rejections based on prior art." *Id.*

# II.    MAGAZINE CATCH BAR

Proposed Construction:  A bar which engages with a magazine and which is connected (not as separate components) to the upper tension bar.

The term magazine catch bar ("MCB") has no clear or known meaning within the industry.  Even the inventor stated that this term has no known industry meaning [Ex. 1010, p. 55], has never heard the term [Id. at 48], and is not readily understandable to a jury [Id. at 56].  Plaintiff's expert agreed that there is no understood meaning of MCB in the industry.  [Ex. 1014 at 28-29].  One purpose of claim construction is to assist the fact finder in understanding the claims and claim scope.  *See, Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1320 (Fed. Cir. 2016) ("a district court may use claim construction to help guide the fact finder through issues that bear on claim scope.").  When the inventor and Plaintiff's own technical expert do not understand a term, MCB should be construed to aid the jury in its understanding.

1

**JUGGERNAUT TACTICAL INC.'S OPENING CLAIM CONSTRUCTION BRIEF**

Every embodiment of the '845 Patent shows  the MCB being connected to the upper tension bar ("UTB"). Figure 3 shows the screw 130 which connects the UTB 110 with the MCB 120.



FIG. 3

[Ex. 1009, col. 5, 5-25]. The UTB and MCB are "attached to the lower receiver by means of a screw which passes through the lower receiver."  [Id. col. 3, ll. 15-18].

Figures 4-5 show where the UTB and MCB are "connected together as one item."  [Id., col. 4, ll. 38-40].  Figure 4 is depicted below.



FIG. 4

As can be seen, the UTB 110 and MCB 120 are integrally made as a single item.



FIG. 5

2

Figure 5 likewise shows that the UTB 110 is integrally made as a single item with the MCB 120.

Thus, every figure and description shows the MCB being connected to the UTB, either through a screw 130, or made integrally as a single item.   There is no description showing the MCB or UTB not being connected. The specification and figures consistently show the MCB connected to the UTB. A POSITA would understand "that achieving the claimed functional result requires the disclosed structural connection between the upper tension bar 110 and the magazine catch bar 120 so that they are restricted to move together. . ."  [Ex. 1015, ¶¶33, 47].

The prosecution history's treatment of MCB and UTB is consistent.  During the second reexamination, Plaintiff attempted to distinguish the cited prior art from claims 1 and 8, which were rejected.  Plaintiff stated "[a]n inherent property of the claimed invention is that its 'magazine catch bar' and 'upper tension bar' are **parts of an integral device** that work together."  [Ex. 1003 at 5 (emphasis added)].  Plaintiff continued that the patent "clarifies that the 'invention is a device which is installed as a permanent component of the firearm.'" [Id.]. Thus, Plaintiff argued the MCB and UTB are parts of an integral device, and that the **<u>invention</u>** is a **<u>device</u>** installed on the firearm.  The device must be an integral device which includes both the MCB and the UTB and which is installed on the firearm.  Plaintiff made the "integral device" argument four times to hammer it home.  These statements were argued together and apply just as equally to claim 1 as claim 8.[1]  A POSITA would recognize that this admission "further confirms that the required and enabling structural connection between the magazine catch bar and the upper tension bar that make them 'integral'… ." [Ex. 1015, ¶51].

---

[1] Claims 1 and 8 have the terms MCB and UTB.  Claim 8 has "device" but claim 1 does not.  These arguments, which were directed to claims 1 and 8, are directed to MCB and UTB because that is what is common in claims 1 and 8.

3

1    The next question is what does "integral" mean.  Integral means "essential to

2    completeness; formed as a unit with another part; composed of parts that make up a

3    whole. . ." [Ex. 1013.  See also Ex. 1011("essential for completion. . . whole;

4    entire; intact"); Ex. 1012 ("essential or necessary for completeness; constituent;

5    whole; entire.")].  Plaintiff separately used the word "integrated" in the first office

6    action.  Plaintiff stated "[t]he set screw becomes part of the upper tension bar as

7    they are integrated to form one piece." [Ex. 1001 at 6].  Thus, the term integrated

8    means to form one piece.  Plaintiff unequivocally and clearly stated that an

9    "inherent" feature is that the MCB are parts of an integrated device.  The

10    specification supports this with either Figure 3 (connected by a screw), or Figure 4

11    (one single piece).  The MCB and UTB must be connected.

12    The PTO agreed with Plaintiff's argument.  Plaintiff convinced the Examiner

13    that the MCB and UTB must be connected.  In maintaining the rejection of claim 1,

14    the Examiner stated that claim 1 "does not have a connection between the magazine

15    catch bar and the upper tension bar. . . Claim 1 has no connection between the

16    magazine catch bar and the upper tension bar.  The combination produces a firearm

17    with a fixed magazine having these two components and that is all that is required

18    for claim 1." [Ex. 1004 at 6].  This argument was repeated through many different

19    rejections.  [See id. at 7-8]. For the allowable subject matter, the Examiner stated

20    "Claim 1 has been rejected due to the lack of connection between the magazine

21    catch bar and the upper tension bar. Claim 2 (and 3 by dependency) states a

22    relationship between these components **so that a showing of separate components**

23    is not seen to meet the claimed relationship."  [Id. at 9].  Thus, claim 1 was rejected

24    because it did not recite a connection between the UTB and MCB.  The Examiner

25    continued "Similarly claim 8 positively claims a device for converting a firearm

26    with a detachable magazine into a firearm with a fixed magazine, the device

27    comprising both an upper tension bar and a magazine catch bar that can be used on a

28    firearm." [Id.].  The device must comprise both a UTB and MCB.  Plaintiff argued

4

**JUGGERNAUT TACTICAL INC.'S OPENING CLAIM CONSTRUCTION BRIEF**

that UTB and MCB must be connected, and the Examiner agreed.  The Examiner found the connectivity if the device has the MCB and UTB connected.[2]  Note, Plaintiff argued "the invention is a device installed on the firearm." [Ex. 1003 at 5].  The **device**, which has the UTB and MCB, must be installed.  The sole reason claim 8 survived is the Examiner's perceived connection between MCB and UTB through the term device.  Regardless, Plaintiff urged a construction that required the MCB and UTB be connected, and the PTO used this as rationale in allowing some claims and rejecting claim 1.  The point is there was a meeting of the minds between Plaintiff and Examiner - the MCB and UTB must be connected to be valid.

Plaintiff and Examiner had an interview, and Examiner stated Plaintiff "argued that the interplay between the catch bar and the tension bar is an inherent characteristic of the claimed invention. . . The examiner feels that the claimed invention does not have any connection between the catch bar and the tension bar (the claims indicating a connection have been indicated as allowable), so claiming non-connected components produce an inherent mechanical synergy is impermissible reading the specification into the claims."  [Ex. 1008 at *4].

Before the interview, the PTO entered a Final Office Action, reasserting many of Examiner's previous assertions.  In rejecting claim 1, the PTO reasserts that "Claim 1 has no connection between the magazine catch bar and the upper tension bar." [Ex. 1004 at 6].  In response to Plaintiff's argument that the "integral" language was inherent, the Examiner rebutted that "[c]iting portions of the specification to define the invention does not change the fact that the claim does not claim the magazine catch bar and the upper tension bar are 'parts of an integral device.'  This was claimed in claim 8, which has been found allowable." [Id. at 10].  The Examiner is making clear that claim 8 requires the MTB and UTB be connected.  This was crucial for allowance of claim 8 and is what was lacking in

---

[2] This rationale was re-asserted by the PTO in the Notice of Intent to Issue. [Ex. 1005 at 2-3].

**JUGGERNAUT TACTICAL INC.'S OPENING CLAIM CONSTRUCTION BRIEF**

claim 1.  Because this mutual construction was crucial for allowance, Plaintiff cannot now seek a different construction.  Lest there be doubt, the Examiner continued that "claim 1 does not claim an integral device having a magazine catch bar and an upper tension bar that work together.  It claims a rifle that has both components, no claimed interaction or integral nature (other than they are on the same rifle).  This was claimed in claim 8, which has been found allowable." *Id*. It is clear that claim 8 was confirmed due to the connection between the UTB and MCB.

Examiner is consistent from the non-final office action, to the interview summary, to the final office action, and to the notice of intent to issue that there must be a connection between the MCB and the UTB.  This was crucial to claim 8 being confirmed.  Claims cannot be "construed one way in order to obtain their allowance and in a different way against accused infringers." *Spectrum Intern., Inc. v. Sterilite Corp*., 164 F.3d 1372, 1379 (Fed. Cir. 1998)(internal citations omitted).  This applies "with equal force to arguments made by a patentee to sustain the patentability of claims during reexamination." *Id.*  The terms MCB and UTB were construed as requiring a connection.  This was baked into allowance.  Plaintiff cannot now disavow this limited construction and seek a broader construction that does not require the connection.

Juggernaut's construction is consistent with the specification and prosecution history which both require the MCB being connected to the UTB.  This construction does not exclude an OEM MCB and is, therefore, not inconsistent with the Federal Circuit's construction of MCB.

## III.   UPPER TENSION BAR

Proposed Construction:  A bar which can engage with the upper receiver and which is connected (not as separate components) to the magazine catch bar.

As with MCB, there is no understood or accepted meaning of UTB.  Plaintiff's technical expert agrees saying "outside of our- this small group of friends, almost nobody knows what an upper tension bar is."  [Ex. 1014 at 120-123].

Inventor Harris agrees stating "I don't know what 'upper tension bar means" and that the definition is not readily apparent. [Ex. 1010 at 60, 70 ("'upper tension bar' means nothing to me"), 73, 76].   When the inventor and Plaintiff's own technical expert do not understand the term, UTB should be construed.

As noted, the specification and prosecution history make clear that the UTB and the MCB are connected (not as separate components).  The prosecution history, and references to the specification, discussed above with reference to MCB are applicable here as well.  The MCB is connected to the UTB, and the UTB is connected to the MCB.  Nothing in the '845 Patent would convey to a POSITA "that the inventors of the '845 Patent ever had possession of an invention in which the upper tension bar and the magazine catch bar would not be connected to each other so as to be restricted to move together, yet still provide the claimed functional result of a fixed magazine."  [Ex. 1015, ¶30].

The UTB engages with the upper receiver.  It must be a bar, as that term has been construed, discussed below.[3]  Further, it must be connected to the MCB.  Juggernaut's proposed construction is consistent with the specification and the prosecution history.

## IV.  BAR

Proposed Construction:  a generally rectangular member excluding an L-shape or a U-shape.

During the first reexamination, Patent Owner attempted to distinguish the Accu-Wedge, which Examiner asserted was an UTB.  A picture of the L-shaped Accu-Wedge is reproduced below.

---

[3] The construction of the term "bar", construed separately, can instead be applied to the construction of UTB.

**JUGGERNAUT TACTICAL INC.'S OPENING CLAIM CONSTRUCTION BRIEF**



Plaintiff stated "[t]he notion that the Accu-Wedge equates to 'an upper tension bar' is absurd.  The inventors chose to describe this component as a 'bar,' not a generic 'means for' or 'element' that lacks any structural qualification.  The Accu-Wedge is not a 'bar' by any definition."  [Ex. 1001 at 8]. This amounts to a clear disavowal of an L-shaped member, which Plaintiff states cannot be a bar. Plaintiff continued "this rejection is improper as it eliminates the term 'bar' from the claims.  To maintain this rejection would be a travesty . . . as specific words chosen by inventors to describe their inventions no longer have any relevance."  [Ex. 1001 at 8].  Plaintiff disclaimed an L-shaped member in Accu-Wedge.  It would be a "travesty" to ignore the "specific words chosen by inventors."  [*Id.*].

The Examiner agreed with Plaintiff's disavowal and stated (with respect to a separate rejection) that the term "bar" must "resemble a bar".  [Ex. 1002 at 4].

Plaintiff was consistent in the second reexamination arguing "a plate is not a bar.  The Office has improperly read out the plain and ordinary meaning of the term 'bar'."  [Ex. 1003 at 9]. Plaintiff was distinguishing the U-shaped plate underlying the magazine release button from Calguns.

8



Plaintiff made statements of the meaning of the term bar by making a disavowal of claim scope. Plaintiff made this statement by characterizing the "bar" in a way to overcome the L-shaped member of Accu-Wedge and the U-shaped member of Calguns. *See Computer Docking Station Corp. v. Dell, Inc*, 519 F.3d 1366, 1374 (Fed. Cir. 2008). This disavowal is clear. The term must be construed as generally rectangular and excluding an L-shaped and U-shaped member.

Alternatively, the disavowal of U-shape and L-shape applies only to the upper tension bar. The U-shape and L-shape were being cited as upper tension bars. Thus, the disavowal of the L-shape and U-shape applies at least to the claim term "upper tension bar."

## V.    MAGAZINE

Proposed Construction: an ammunition feeding device that accepts no more than 10 rounds.

The '845 Patent consistently describes its magazine as being limited to no more than 10 rounds. It even describes "the invention" as being so limited. "[T]he invention is intended to be utilized **only** with semi-automatic firearms utilizing magazines of not more than ten rounds." [Ex. 1009, col. 2, ll. 28-30 (emphasis added). "When a patent thus describes the features of the 'present invention' as a whole, this description limits the scope of the invention." *Verizon Service Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007). When a specification describes a feature as "this invention" rather than as a preferred

9

1   embodiment, a claim term should be construed as required by the "invention." *See*

2   *Gutterglove, Inc. v. Am. Die & Rollforming, Inc*., 2017 U.S. Dist. LEXIS 153362,

3   *29, 2017 WL 4124229 (E.D. Cal. 2017).

4        This limitation carried forward in the reexaminations. Plaintiff argued the

5   "'845 patent goes to great lengths to discuss the problems arising from assault

6   weapon legislation and a firearm owner's obligation to comply with such by 'fixing'

7   the magazine. See id. at col. 1:30." [Ex. 1001 at 3]. The portion of the '845 Patent

8   cited discusses the Assault Weapons Ban of 2013, which is recited in the patent.

9   [Ex. 1009, col. 1, ll. 30-58].

10       The Examiner quoted the same legislation in the Notice of Intent to Issue.

11  [Ex. 1002 at 2]. Using this legislation, Examiner adopted Plaintiff's proffered

12  construction of "fixed magazine." However, also included in the legislation, and

13  quoted by Examiner, is that an assault rifle is one "that has a fixed magazine with

14  the capacity to accept more than 10 rounds." [Id.]. If Plaintiff and Examiner are

15  relying upon the legislation cited in the '845 Patent to construe "fixed magazine",

16  then the legislation language limiting the magazine to less than 10 rounds cannot be

17  ignored. Plaintiff cannot rely upon the discussed legislation when it suits them and

18  ignore the parts that it dislikes. If, as Plaintiff asserted during reexamination, the

19  entire thrust of the patent is to ensure lawful compliance with the legislation, and

20  that legislation is cited and relied upon by the Examiner, then magazine must be

21  limited to ten rounds or less to ensure compliance. The "invention is" language

22  limiting to magazines or not more than ten rounds supports Plaintiff's argument,

23  Examiner's rationale for allowance, and the proposed construction.

24  **VI.  FIXED MAGAZINE**

25       Proposed Construction: an ammunition feeding device that is permanently

26  fixed to a semi-automatic firearm in such a manner that it cannot be removed

27  without disassembly of the firearm and which accepts no more than 10 rounds.

28

**JUGGERNAUT TACTICAL INC.'S OPENING CLAIM CONSTRUCTION BRIEF**

The term "fixed magazine", found in the pre-amble of independent claims 1 and 8, became limiting when Plaintiff argued they "breath[e] life into these claims." [Ex. 1001 at 3].  Plaintiff asserted that the term "fixed magazine" is "an ammunition feeding device that is permanently fixed to the firearm in such a manner that it cannot be removed without disassembly of the firearm." [Id.]. For support, Plaintiff referenced and cited to the firearm legislation discussed in the patent.  [Id.].

The Examiner agreed and even referenced and quoted the same legislation in construing "fixed magazine."  [Ex. 1002 at 2].  The Examiner even underlined portions of the bill defining "detachable magazine" which coincided with Plaintiff's urged meaning.  The Examiner stated fixed magazine is interpreted as "an ammunition feeding device that is permanently fixed to the firearm in such a manner that it cannot be removed without disassembly of the firearm."  [Id. at 3].

If the Examiner and Plaintiff both obtain the definition of "fixed magazine" directly from the legislation, the other portions of the legislation cannot be ignored. As Plaintiff asserted to the PTO, the thrust of the patent is to ensure firearm owner's compliance with the law by "fixing the magazine."  [Ex. 1001 at 3].  "Fixing" the magazine requires limiting the magazine to ten rounds or less.  [Ex. 1009, col. 1, ll. 43-45 (defining an assault weapon as one with a fixed magazine that has more than 10 rounds)].

Plaintiff cannot rely upon legislation to limit "fixed magazine" to avoid invalidity while excluding limiting portions of the legislation.  If the legislation quoted by the patent is important enough to be used to define "fixed magazine", then the portion which limits the magazine to ten rounds or less is also imported into the definition of magazine.  As noted, inventor defined the invention, stating "the invention is intended to be utilized **only** with semi-automatic firearms utilizing magazines of not more than ten rounds."  [Ex. 1009, col. 2, ll. 28-30 (emphasis added).  The injection of the Assault Weapons Bill of 2013 which requires less than ten rounds into the construction of "fixed magazine", the PTO's reliance upon it,

11

and the invention being defined as utilized only with magazines less than 10 rounds, requires this construction.

## VII.    FIREARM

Proposed Construction:  semi-automatic rifle.

"[T]he invention is intended to be utilized **only** with semi-automatic firearms utilizing magazines of not more than ten rounds."  [Ex. 1009, col. 2, ll. 28-30 (emphasis added)].  "The present invention is a device and method for converting a semi-automatic rifle with a detachable magazine into a semi-automatic rifle with a fixed magazine."  [Id., col. 2, ll. 3-5].  "When a patent thus describes the features of the 'present invention' as a whole, this description limits the scope of the invention."  *Verizon*, 503 F.3d at 1308.

Plaintiff relied upon the Assault Weapons Ban of 2013 during the reexamination.  The Examiner quoted the Assault Weapons Ban of 2013 in construing "fixed magazine."  If the legislation limits the construction of "fixed magazine", then the limitation of a "semi-automatic rifle" from the legislation, cited by the Examiner, is also required.  The reexamination prosecution history supports the definition of the invention above, limiting firearms to "semi-automatic rifle."

## VIII.   DEVICE

Proposed Construction:  A single unitary item that includes a magazine catch bar and an upper tension bar.

As discussed, Plaintiff stated "[a]n inherent property of the claimed invention is that its 'magazine catch bar' and 'upper tension bar' are ***parts of an integral device*** that work together."  [Ex. 1003 at 5 (emphasis added)].  Plaintiff continued that the patent "clarifies that the 'invention is a device which is installed as a permanent component of the firearm.'"  [Id.].  Thus, Plaintiff argued the MCB and UTB are parts of an integral device, and that the **invention** is a **device** installed on the firearm.  The device must be an integral device which includes both the MCB

12

and the UTB and which is installed on the firearm. The prosecution history requires a single unitary, integral device which include a MCB and UTB.

## IX.  EXTERIOR

Proposed Construction:  outer surfaces visible from the outside of assembled rifle.

The term "exterior" is not used in the '845 Patent. This term is introduced during the second reexamination.

Juggernaut previously suggested a construction of UTB which contacts an exterior surface. Plaintiff objected that the phrase "unnecessarily raises the question of what constitutes 'an exterior surface.' Is every surface of the upper receiver an 'exterior surface.'" [Doc. 43 at 4]. Even Plaintiff recognizes this term needs a construction. To a POSITA, the term refers to "the outer surface of the upper receiver, i.e., surfaces visible from the outside after the rifle is fully and normally assembled." [Ex. 1015, ¶60]. The lower-facing undersurfaces of the upper receiver are not visible when the rifle is assembled and would not be considered exterior surfaces. [Id.].

## X.  DEVICE FOR CONVERTING – 35 U.S.C. 112(f)

The claim term in the preamble of claim 8 "device for converting a firearm with a detachable magazine into a firearm with a fixed magazine" is subject to construction as a means-plus-function claim pursuant to 35 U.S.C. §112(f). Under 112(f), the claim should be construed to mean "a single unitary item that includes a magazine catch bar and an upper tension bar."  Claim 8 is subject to means-plus-function treatment because the claim does not connote sufficiently definite structure to one of ordinary skill in the art. *Dyfan, LLC. v. Target Corp.* 28 F.4th 1360, 1365 (Fed. Cir 2022). A claim that employs "means for" language is presumed to be subject to §112(f), but this presumption is rebuttable. *Id.* The inverse is also true as the claim drafter's use of a word other than "means" casts a rebuttable presumption against treatment under §112(f). Other terms used instead of "means" with claim

13

language that recites function rather than structure may overcome the presumption, making §112(f) applicable. "Generic terms such as 'mechanism', 'element', 'device,' and other nonce words that reflect nothing more than verbal constructs may be used in a claim in a manner that is tantamount to using the word 'means'" because they lack sufficient structure. *Williamson v. Citrix Online, LLC,* 792 F.3d 1339, 1349 (Fed. Cir. 2015). The USPTO considers use of "device for" among those generic placeholders that are simply a substitute for the term "means" and may invoke §112(f). MPEP 2181. Once §112(f) is deemed applicable, the "means" portion of the claim is defined by the disclosure in the patent specification that corresponds to the claimed function. *Id.*

Here, the limitation "device for converting a firearm with a detachable magazine into a firearm with a fixed magazine" is subject to 112(f). The preamble of Claim 8, which is now limiting based on Plaintiff's argument, would not inform one of ordinary skill in the art of sufficiently definite structure. [Ex. 1001, p.3; Ex. 1015, ¶62]. The Examiner also expressly distinguished claim 8 from claim 1 (which was cancelled) by virtue of the former "positively" claiming a "device" while the latter claims a "firearm". [Ex. 1005, p. 5; Ex. 1004, p. 9]. The claimed "device" is defined only in terms of its function - converting a firearm with a detachable magazine into a firearm with a fixed magazine. [Ex. 1015, ¶63]. No other structure is recited in the preamble. Accordingly, in order to properly construe the claim, one must resort to the patent's specification for the disclosed structure that corresponds to the claimed function.

The '845 Patent specification shows the structure that corresponds to the functional language "converting a firearm with a detachable magazine into a firearm with a fixed magazine" in Figure 3 and accompanying text. Figure 3 depicts a device comprised of MCB 120 and UTB 110 that are connected by screw 130. [Ex. 1009, col.5; line 25 – col. 6; line 18, FIG. 3] The embodiment disclosed in Figure 3 is one device that performs the recited structure. [Ex. 1015, ¶69-71]

**JUGGERNAUT TACTICAL INC.'S OPENING CLAIM CONSTRUCTION BRIEF**

Figures 4 and 5 also depict a device for converting. In Figures 4 and 5, a MCB 120 joins an UTB 110 and screw 130 passes through the joined MCB/UTB. [Ex. 1009, col. 6, ll. 18-46; FIGs. 4, 5; Ex. 1015, ¶69-71].

These are the only embodiments of the claimed device for converting a firearm with a detachable magazine into a firearm with a fixed magazine. The devices disclosed in Figure 3 and 4 and 5 both comprise a single unitary item that includes a MCB and UTB. Figure 3 shows a UTB and MCB connected by a screw that is threaded into the MCB. Figures 4 and 5 show a single item in which the MCB and UTB are formed as a unit. Each of these embodiments, the only such embodiments disclosed that convert the firearm as claimed, would be understood by one of ordinary skill in the art as a single, unitary item that includes a MCB and UTB. A POSITA can resort to no other teaching in the patent. [Ex. 1015, ¶¶69-71].

## XI.   INDEFINITENESS UNDER 35 U.S.C. 112

Under §112(a), "[a] claim is invalid for indefiniteness if its language, when read in light of the specification and the prosecution history, 'fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention.'" *Biosig Instruments, Inc. v. Nautilus, Inc*., 783 F.3d 1374, 1377 (Fed. Cir. 2015) (citations omitted).

Claims are construed, if possible, to sustain their validity. *Liebel-Flarsheim Co. v. Medrad, Inc.* 358 F.3d 898, 911 (Fed. Cir. 2004). If after applying the tools of claim construction the claim remains ambiguous, the claim is invalid. *Id.* This claim preservation axiom is not license for courts to rewrite ambiguous claims to salvage their validity. *Id.* Juggernaut submits that if the various patent claims in dispute are assigned their plain and ordinary meaning as urged by Plaintiff, the claims will be invalid as failing the written description and enablement requirements of §112.

At least claims 2-3, 8-10, and 21-23 are invalid under the enablement requirement of 35 U.S.C. §112(a). For a patent to fulfill the enablement requirement of 35 U.S.C §112 (a), "the specification of a patent must teach those

15

skilled in the art how to make and use the *full scope* of the claimed invention without 'undue experimentation.'" *MagSil Corp. v. Hitachi Glob. Storage Techs., Inc.*, 687 F.3d 1377, 1380 (Fed. Cir. 2012) (citing *Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997)). The enablement requirement doesn't mean that there must be no experimentation, but "undue" experimentation. *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1998) (citation omitted). The questions of whether experimentation is "undue" is a question of law underpinned "by weighing many factual considerations." *Id.*  Enablement is satisfied when one skilled in the art, after reading the specification, could practice the claimed invention without "undue experimentation." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1380 (Fed. Cir. 2007). "[A]s part of the quid pro quo of the patent bargain" the specification must enable a POSITA to practice the full scope of the claimed invention. *Id.*

The specification must enable all embodiments it alleges the patent claims cover. *See, e.g., Auto. Techs. Int'l, Inc. v. BMW of N. Am.,* 501 F.3d 1274, 1284 (Fed. Cir. 2007)(claims directed to "sensing devices" for deploying airbags found invalid because specification enabled mechanical impact sensors but did not enable electronic impact sensors); *Liebel-Flarsheim*, 481 F.3d at 1378–80. "[A] patentee chooses broad claim language at the peril of losing any claim that cannot be enabled across its full scope of coverage." *MagSil*, 687 F.3d at 1381. The undue experimentation factors (the "*Wands* Factors") are: (1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented by the inventor, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims. *See In re Wands*, 858 F.2d 731 (Fed.Cir.1988).

35 U.S.C. §112(b) provides "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter

16

which the inventor or joint inventor regards as the invention" The written description requirement demands that the disclosure of the application relied upon must reasonably convey to POSITA that inventor had possession of the claimed subject matter as of the filing date. *Ariad Pharms., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (*en banc*). The patent owner may only exclude others from what they had actually invented as of the priority date. *Id*. The written description analysis requires the factfinder to compare the claim scope with what is disclosed in the specification from the perspective of a skilled artisan. *See, e.g., Columbia Ins. Co. v. Simpson Strong-Tie Co. Inc.*, 2023 U.S. App. LEXIS 7653, *6-7, 2023 U.S.P.Q.2D (BNA) 397, 2023 WL 2733427 (citing *ULF Bamberg v. Dalvey*, 815 F.3d 793, 797-98 (Fed. Cir. 2016)). The specification must show possession and enablement for the full breadth of the claimed invention. *Genentech,* 108 F.3d at 1365.

### A.    The Asserted '845 Claims Lack Enablement

Although the Examiner found claim 8 allowable because it claims a device, the Examiner did not opine on the claims' enablement and written description requirements.  Claims 1 and 8 as drafted fail to recite any connectivity of the MCB or UTB or any relationship between the components.  The Examiner's affirmative limiting of the UTB and MCB in claim 8 as a single device notwithstanding, claims 8, 9 and 10 and claims 2 and 3, and 21-23 fail the enablement requirement of §112(a) and the written description requirement of §112(b).  The Examiner found claim 1 lacks any recitation of connection between the MCB and UTB.  And though the Examiner limited claim 8 to a single device having both components, there is no limitation in any claim directed to connection of the MCB and UTB.  The Examiner confirmed there is no express limitation in the claims of how the claimed components interact structurally with one another to form the claimed firearm with a fixed magazine of claim 1 or the claimed device for converting a firearm with a detachable magazine into a firearm with a fixed magazine of claim 8.  Under the

17

plain and ordinary meaning of the asserted claims as originally filed, issued and reexamined, they cover a firearm or device a having a MCB and UTB that are not connected.

The Examiner's remarks on connectivity of claims 2 and 3 may have prevented finding those claims obvious over the prior art.  But they don't go so far as to recite some structural relationship between the MCB and UTB.

Structurally, the asserted claims recite only that there is a MCB, a UTB and receivers. No connection between the MCB and UTB is claimed.  The rest of the limitations of those claims refer to how the MCB and UTB function.  There is no limitation that recites structurally how the UTB and MCB are connected.  [Ex. 1015, ¶¶39-42].  The dependent claims only recite what happens when the upper receiver and the lower receiver are in an "open" or "closed" position, or where the upper tension bar contacts the upper receiver; the claims are silent as to some structural relationship between the UTB  and MCB.  This void reflects a lack of enablement. [Ex. 1015, ¶33].

Newly added claims 21-23 offer no limitation providing connection between the UTB and MCB.  Beyond that, under the doctrine of claim differentiation, the express limitations of claims 21 and 23 mean their respective independent claims are not limited to a UTB located outside of the lower receiver that contacts an exterior surface of the upper receiver.  But there is no teaching in the patent that the UTB is located elsewhere and contacts something other than the exterior surface of the upper receiver.  If plain meaning is applied to these claims as drafted, they fail under §112(a).

Claims 2, 3, and 21, which include the limitations of cancelled claim 1, and Claims 8-10 and 22 and 23 are so broad that they cover any location of the UTB. The body of claim 8 is more paltry than cancelled claim 1.  Even the punctuation is missing.  Claim 8 recites only two elements: a MCB and an UTB.  There is no structural relationship between the MCB and UTB.  As claimed this device is so

**JUGGERNAUT TACTICAL INC.'S OPENING CLAIM CONSTRUCTION BRIEF**

boundless that the MCB and UTB can be a unitary device, such as shown in Figures 3-5. [Ex. 1015, ¶¶32-33].  But the breadth of claim 8 also covers two distinct and unconnected components for converting a firearm to one with a fixed magazine. The patent specification describes how a device with the MCB and UTB connected together works, but there is no discussion of how unconnected MCB and UTB (a) fit into the firearm and (b) operate together to cause the magazine to be fixed.  For this reason, claim 8 on its face lacks enablement.

The claims also cover a UTB located inside of the lower receiver that contacts the exterior surface of the upper receiver, a UTB located inside of the lower receiver that does not contact the exterior surface of the upper receiver, and a UTB located outside of the lower receiver that does not contact the exterior surface of the upper receiver.  Yet nothing in the specification discloses these alternatives.  The only disclosures in the '845 Patent that describe the location of the UTB and what it contacts(other than text that parrots the claim language and that it applies pressure against the upper receiver) are in Figures 1 and 2 and the accompanying specification text. [Ex. 1015, ¶42-44].  Figure 1 shows the UTB bar portion against the exterior of the upper receiver and the specification where the UTB is described as extending towards and contacts the upper receiver.  In Figure 2, there appears to be no contact as the upper and lower receivers are separated. There is no teaching, however, of the UTB located anywhere other than outside of the lower receiver and that the UTB makes contact anywhere other than the outside of the upper receiver. For these reasons, claims 2, 3, 8-10, 21 and 23 fail the written description and enablement requirements.

In view of the broad claims drafted by Plaintiff and the plain meaning constructions advanced by Plaintiff here, the asserted claims fail the enablement requirement of §112(a). Application of the undue experimentation test to these claims results in a lack of enablement.  [Ex. 1015, ¶33-34].

19

1    Under the *Wands* factors, a great deal of experimentation would be necessary

2    to devise a firearm having the claimed "floating" and structurally distinct MCB and

3    UTB that results in a fixed magazine.  [Ex. 1015, ¶¶32-33]. A firearm such as that

4    discussed in the '845 Patent is an intricate mechanical device where the many

5    components work together to offer precise performance of the firearm.  The '845

6    Patent discloses a distinct device formed of a connected MCB component and a

7    UTB component.  There are two embodiments described.  In FIG. 3, the MCB is

8    one part that is directly attached to the UTB with a screw.  [Ex. 1015, ¶46]. In the

9    second of FIGs. 4 and 5, the MCB and UTB are manufactured as a single piece

10   having an MCB side and a UTB side.  [Id., ¶46]. Under these only two

11   embodiments disclosed, the MCB and UTB are directly connected to form the

12   device that makes the magazine in a rifle fixed and converts the rifle to one having a

13   fixed magazine.

14   The key to this fixing and releasing of the magazine is the structural

15   connection of the MCB and UTB.  [Ex. 1015, ¶31-32].  As Plaintiff represented to

16   the Patent Examiner during the second reexamination, "[a]n inherent property of the

17   claimed invention is that its magazine catch bar and upper tension bar are parts of an

18   integral device that work together." [Ex. 1003 at 5].  The only teaching of how the

19   device works together is in Figures 3-5.  This is what the inventors regarded as their

20   invention at the time of invention. But the claims cover so much more.  The claims

21   can cover any magazine catch bar, factory-installed or not, and any type of "bar"

22   that provides tension on the upper receiver.  Even Plaintiff's technical expert Dr.

23   Batzer admitted that claims 1 and 8 recite no structure.  "I already have an idea of

24   what an upper tension bar is.  It were to simply –(inaudible) the claim one, and

25   that's it, that's the only thing I got out of the '845 patent, I wouldn't know what's

26   going on." [Ex. 1014, p. 123-124]   "Claim eight is just saying what exists.  And

27   there's background knowledge to this from the specifications, but really it's claim

28

20

**JUGGERNAUT TACTICAL INC.'S OPENING CLAIM CONSTRUCTION BRIEF**

ten when you're talking about what happens when they are apart." [Ex. 1014, p. 110, ll. 7-10; p. 79, ll. 17-22.]

This is not the case where an accused infringer is attempting to read specification disclosure into the claims. The last of the *Wands* factors, the sheer breadth of the claims, weighs heavily towards a lack of enablement. The '845 Patent specification only enables an ordinarily skilled artisan to achieve a small subset of the claimed range, that is a connected MCB and UTB. *MagSil Corp.*, 687 F.3d at 1384. There is no teaching in the patent supporting the proposition that the knowledge of that artisan would permit a firearm with a fixed magazine or a device that converts a firearm into one with untethered MCB and UTB. The enablement doctrine's prevention of overly broad claims ensures that the patent system preserves necessary incentives for follow-on or improvement inventions. *Id.*

The claims of the '845 Patent are virtually boundless in terms of structure. They cover a connected MCB and UTB and an MCB and UTB that are unconnected. The second *Wands* factor, the amount of direction or guidance provided by the inventor, the inventors here offered nothing. The only embodiments disclosed and discussion provided are of a connected MCB and UTB. Before the USPTO, Plaintiff characterized an inherent part of the claims as the MCB and UTB being part of an integral device that work together. But this language does not appear in the claims themselves. As such, a plain and ordinary meaning construction in view of the claims on their face results in invalid claims. The '845 Patent offers no working examples other than a device with either the MCB and UTB connected directly together by a screw (FIG. 3) or these parts constructed together as a unitary device (FIGs. 4 and 5). The enormous breadth of the claims and the very narrow disclosure of the patent would result in a POSITA to engage in undue experimentation to make the claimed invention. Accordingly, the asserted claims of the '845 Patent are invalid for lack of enablement.

**B.    The Claims Fail the Written Description Requirement**

21

Application of the written description requirement to the '845 patent claims is similar in some respects as the enablement analysis. That is, because of the broad scope of the claims, the patent specification's disclosure must be commensurate with the claims' breadth. As discussed, the asserted claims recite no structural connectivity of the UTB and MCB. Indeed, despite Plaintiff's representations to the USPTO that the claimed UTB and MCB are inherently an integrated device that works together, its accuses a device that is only described in by Plaintiff as an UTB. The accused Juggernaut device is not some "inherently integrated" device in which the MCB and UTB work together.

The breadth with which Plaintiff construes and applies its claims is precisely what the written description requirement is aimed at preventing. Plaintiff achieved broad claims at its peril. No POSITA would glean from the patent that its inventors possessed at the time of invention a MCB and UTB disconnected from one another that can be installed on a firearm to render the magazine fixed or a device that does so, and a UTB located outside of the lower receiver that contacts an exterior surface of the upper receiver as well as other locations discussed, *supra*. Claim differentiation applied to new claims 21 and 23 requires this expansive scope. The terms "exterior" and "surface" are not described or used in the '845 Patent. The Patent, however, offers nothing to support such breadth. There is no support or discussion for these terms. Thus, claims 2, 3, 8-10, 21-23 of the '845 Patent fail the written description requirement of §112(b).

With these enablement and written description concepts in mind, Juggernaut submits that as written and if given their plain and ordinary meaning as argued by Plaintiff, the asserted claims are invalid under §112(a) and (b).

## XII. CONCLUSION

For the foregoing reasons, Juggernaut's proffered constructions should be adopted.

**JUGGERNAUT TACTICAL INC.'S OPENING CLAIM CONSTRUCTION BRIEF**

Dated:  September 15, 2025           By:/s/ Uleses C. Henderson, Jr.

                                      Bobby W. Braxton

                                        *-and-*

                                        Gregory Perrone

                                        *-and-*

                                        **ONE LLP**

                                        Uleses C. Henderson, Jr.

                                        Attorneys for Defendant and Counterclaimant, JUGGERNAUT TACTICAL, INC.

**JUGGERNAUT TACTICAL INC.'S OPENING CLAIM CONSTRUCTION BRIEF**

## <u>LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendant/Counterclaimant JUGGERNAUT TACTICAL certifies that this brief contains 6,978 words, which complies with the word limit of L.R. 11-6.1.


September 15, 2025                                   By: <u>/s/ *Uleses C. Henderson, Jr.*</u>
                                                                  Uleses C. Henderson, Jr.

---

**CERTIFICATE OF COMPLIANCE**