1  Uleses C. Henderson, Jr. (Bar No. 225246)
   Email: uhenderson@onellp.com
2  **ONE LLP**
   23 Corporate Plaza, Suite 150-105
3  Newport Beach, CA 92660
   Telephone: (310) 866-5157
4  Facsimile: (310) 943-2085

Bobby W. Braxton (*Pro Hac Vice*)
Email: braxton@braxtonperrone.com
Gregory Perrone (*Pro Hac Vice*)
Email: perrone@braxtonperrone.com
**BRAXTON PERRONE, PLLC**
2201 Spinks Road, Suite 154
Flower Mound, TX 75022
Telephone: (469) 814-0032

5

6  Attorneys for Defendant/Counterclaimant,
   JUGGERNAUT TACTICAL, INC.

7              **UNITED STATES DISTRICT COURT**

8              **CENTRAL DISTRICT OF CALIFORNIA**

9

10  EVOLUSION CONCEPTS, INC., a
    California corporation,

11

12              Plaintiff,

        v.

13

14  JUGGERNAUT TACTICAL, INC., a
    California corporation; and DOES 1-10,

15  inclusive,

16              Defendants.

17  _____

18  AND RELATED COUNTERCLAIMS

19

Case No. 8:18-cv-01378-JLS-DFM
Hon. Josephine L. Staton

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION AND DEFENDANT JUGGERNAUT TACTICAL INC.'S MOTION FOR RECONSIDERATION OF THE COURT'S ORDER GRANTING-IN-PART PLAINTIFF'S MOTION TO DISMISS AND/OR STRIKE DEFENDANT JUGGERNAUT TACTICAL INC.'S (1) NON-INFRINGEMENT OF CLAIM 8, (2) INCORRECT INVENTORSHIP, (3) INDEFINITENESS, AND (4) INEQUITABLE CONDUCT DEFENSES AND COUNTERCLAIMS**

20

21

22

23

24

25  Date:        January 30, 2026
    Time:        10:30 a.m.
26  Courtroom: 8A

27

28

---

**MEMO OF POINTS AND AUTHORITIES ISO OF JUGGERNAUT TACTICAL INC.'S MOTION FOR RECONSIDERATION**

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................... 1

II.   THE COURT'S CONSTRUCTION OF VARIOUS CLAIM TERMS OF CLAIM 8 ARE FACTS NOT CONSIDERED BEFORE THE ORDER WAS ENTERED ............................................................................... 2

III.  THE COURT'S CONSTRUCTION OF "DEVICE" INVOKES PLAINTIFF'S NEW ALLEGATION OF CONTRIBUTORY INFRINGEMENT ................... 7

IV.   THE CONSTRUCTION EFFECTIVELY APPLIED AN EXCEPTION TO THE MANDATE ............................................................................... 10

V.    THE INEQUITABLE CONDUCT CLAIM AS TO THE SCHOENFELD REFERENCE SHOULD NOT HAVE BEEN DISMISSED ........................... 11

      A.    The Court Considered Evidence Outside of the Pleadings ................... 11

      B.    New Evidence Demonstrates that the PTO Did Not Consider Schoenfeld ............................................................................... 13

      C.    Even if the Litigation Summary Is Considered, That Only Applies to One of Two Reexaminations ............................................................. 18

VI.   THE INEQUITABLE CONDUCT CLAIM AS TO THE "INVENTION IS" STATEMENT ............................................................................... 18

VII.  CONCLUSION ............................................................................... 20

MEMO OF POINTS AND AUTHORITIES ISO OF JUGGERNAUT TACTICAL INC.'S MOTION FOR RECONSIDERATION

# TABLE OF AUTHORITIES

**Cases**

*Am. Med. Sys., Inc. v. Biolitec, Inc.*,
  618 F.3d 1354 (Fed. Cir. 2010) ............................................................... 7

*Baxter v. Fresenius USA. Inc. v. Baxter Int'l, Inc.*
  721 F.3d 1330 (Fed. Cir 2013) ............................................................ 5, 6

*Bonilla v. Oakland Scavenger Co.*,
  697 F.2d 1297 (9th Cir. 1982) ......................................................... 11, 13

*Data Engine Techs. LLC v. Google LLC*,
  10 F.4th 1375 (Fed. Cir. 2021) ............................................................... 5

*Fin Control Sys. Pty, Ltd. v. OAM, Inc.*,
  265 F.3d 1311 (Fed. Cir. 2001) ............................................................... 3

*Molins PLC v. Textron, Inc.*,
  48 F.3d 1172, 1995 U.S. App. LEXIS 2959, 33 U.S.P.Q.2D (BNA) 1823 .......... 15

*Packet Intel, LLC v. NetScout Sys.*,
  100 F.4th 1378 (Fed. Cir. 2024) .............................................................. 5

*Phil-Insul Corp. v. Airlite Plastics Co.*,
  854 F.3d 1344 (Fed. Cir. 2017) ............................................................... 3

*Phillips v. AWH Corp.*
  415 F.3d 1303 (Fed. Cir. 2005) .......................................................... 4, 10

*Refac International, Ltd. v. IBM*,
  798 F.2d 459 (Fed. Cir. 1986) ................................................................ 9

*Rexnord Corp. v. Laitram Corp.*,
  274 F.3d 1336 (Fed. Cir. 2001) ............................................................... 3

*Richtek Tech. Corp. v. uPI Semiconductor Corp.*,
  2011 U.S. Dist. LEXIS 14095, No. 09-05659 (N.D. Cal. Feb. 3, 2011) ............... 6

*SFA Sys., LLC v. 1-800-Flowers.com, Inc.*
  2011 U.S. Dist. LEXIS 87940, Civ. No. 6:09-cv-340 (E.D. Tex. Aug. 8 2011) .... 8

*U.S. v. Cuddy*,
  147 F.3d 1111 (9th Cir. 1998) ........................................................... 4, 10

*Vitronics Corp. v. Conceptronic*,
    90 F.3d 1576 (Fed. Cir. 1996) ................................................................ 2

**Statutes**

35 U.S.C. 112 ........................................................................................... 8

35 U.S.C. 271(c) ...................................................................................... 9

**Other Authorities**

Fed. R. Civ. P. 12(d) ............................................................................... 12

iii

## I.    INTRODUCTION

The Court granted, in part, Plaintiff's motion to dismiss 1) Juggernaut's defenses of non-infringement of claim 8, and 2) many of Juggernaut's inequitable conduct allegations.  As to the inequitable conduct allegations, the Court committed reversible error by considering documents outside of the pleadings and not giving Juggernaut an opportunity to fully respond by conducting discovery.

Juggernaut respectfully requests reconsideration of the Court's grant of Plaintiff's motion to dismiss the non-infringement defense of claim 8 of the '845 Patent.  Juggernaut submits that the Order granting Plaintiff's motion to dismiss represents a failure of the Court to consider material facts presented to the Court before the order was entered.  L.R. 7-18(c).  Juggernaut bases this aspect of this motion on two grounds.  First, the Court's claim construction entered on November 4, 2025 in which the Court ascribed a specific construction to the claim terms "magazine catch bar" and "bar" one day before the order granting the motion to dismiss, is a material fact that was not considered by the Court before entry of the order.  Second, the Court failed to consider that by ruling that the claim 8 term "device" is construed according to its plain and ordinary meaning, Juggernaut only infringes claim 8 under a theory of contributory infringement.  Plaintiff had not alleged contributory infringement as a theory of infringement prior to the Federal Circuit appeal, but only in its post-appeal Amended Complaint.  The Federal Circuit's judgment, therefore, could not have expressly or implicitly resolved the question of contributory infringement.  The Court's claim construction order also is based on Plaintiff's disavowal of claim scope during the reexaminations.  As Juggernaut argued, this is new evidence or a change in circumstances for which the Court should have applied an exception to the "mandate rule".  Further, these disavowals of claim scope, which only occurred in the post-appeal reexamination, undermine the Court's finding in the order on the motion to dismiss that there was no change in claim scope of the '845 Patent other than via the interplay between the

1

1   MCB and UTB.   Doc. 274, p. 4.

2         Respectfully, this conclusion by the Court is incorrect.  The prosecution

3   history can often inform the meaning of the claim language by demonstrating how

4   the inventor understood the invention and whether the inventor limited the invention

5   in the course of prosecution, *making the claim scope narrower than it would*

6   *otherwise be. Vitronics Corp. v. Conceptronic*,  90 F.3d 1576, 1582–83 (Fed. Cir.

7   1996)(emphasis added).  Here, in addition to the Court's new construction of MCB

8   and UTB, the Court's construction of "bar" and making "device" a limitation of

9   claim 8 based on the reexamination prosecution history, by definition results in a

10  narrower claim scope.  The order of dismissal reflects a failure to consider the

11  impact of all of construed terms on the scope of claim 8 when ruling on the motion

12  to dismiss.  As such, reconsideration and denial of the motion to dismiss the claim 8

13  non-infringement defense is warranted at least under L.R. 7-18(c).

14        As discussed below, Juggernaut requests that the Court  reconsider its

15  November 5, 2025 order dismissing with prejudice the non-infringement defense

16  and counterclaim concerning claim 8 and deny Plaintiff's motion to dismiss.

17  **II.    THE COURT'S CONSTRUCTION OF VARIOUS CLAIM TERMS OF**

18  **CLAIM 8 ARE FACTS NOT CONSIDERED BEFORE THE ORDER WAS**

19  **ENTERED**

20        In its November 4, 2025 claim construction order, the Court construed the

21  terms magazine catch bar ("MCB"), upper tension bar ("UTB") and bar based on

22  the Juggernaut's arguments that these terms should be given specific constructions

23  because of Plaintiff's arguments at the USPTO.  These arguments represented a

24  disavowal of claim scope.  Although the Court did not fully adopt the constructions

25  advanced by Juggernaut, the Court nevertheless narrowed the previously construed

26  "magazine catch bar" and the terms "upper tension bar" and "bar" to which a plain

27  meaning construction would have applied.

28        Prior to the dismissal of the claim 8 non-infringement defense, there was no

**MEMO OF POINTS AND AUTHORITIES ISO OF JUGGERNAUT TACTICAL INC.'S MOTION FOR RECONSIDERATION**

1  construction of "bar" and the MCB was only construed as including an original

2  equipment manufacturer ("OEM") magazine catch bar. UTB was not previously

3  construed but in the first claim construction the Court applied a plain and ordinary

4  meaning construction.

5        As Juggernaut has argued, Plaintiff made numerous representations before the

6  PTO in the reexaminations of how claim 8 differed from the prior art.  The Court

7  agreed and further construed the terms MCB, UTB and bar according to Plaintiff's

8  arguments made in the second reexamination following the PTO's rejection of all

9  pending claims.  Following the claim construction, the terms MCB and UTB have

10  been further limited to require that there is "interplay" between the two.  In addition,

11  the term bar is construed to mean that which is "not a plate."  These constructions,

12  by definition, reflect a change to material facts in the case that appears to have not

13  been considered by the Court when it granted Plaintiff's motion to dismiss the non-

14  infringement counterclaims of claim 8.

15        It is an axiom of patent law that a claim term is to be given the same meaning

16  across all claims in which it appears.  *Phil-Insul Corp. v. Airlite Plastics Co*., 854

17  F.3d 1344, 1359 (Fed. Cir. 2017) ("It is well-established … that claim terms are to

18  be construed consistently throughout a patent.); *Rexnord Corp. v. Laitram Corp.*,

19  274 F.3d 1336, 1342 (Fed. Cir. 2001) ("[A] claim term should be construed

20  consistently with its appearance in other places in the same claim or in other claims

21  of the same patent.").  "[T]he same terms appearing in different portions of the

22  claims should be given the same meaning unless it is clear from the specification

23  and prosecution history that the terms have different meanings at different portions

24  of the claims." *Fin Control Sys. Pty, Ltd. v. OAM, Inc.*, 265 F.3d 1311, 1318 (Fed.

25  Cir. 2001). Pursuant to this requirement of consistency, the term MCB for all

26  claims, including claim 8, means a bar that can be an OEM that has "an interplay"

27  between it and UTB.  A UTB for all claims, including claim 8, is a bar that has an

28  interplay with a MCB.  And per the Court's construction, a bar (such as a MCB or

1   UTB, which appear in claim 8) is some element that is not a plate.

2          The Court's grant of the motion to dismiss Juggernaut's non-infringement

3   counterclaims and defenses of claim 8 cannot be squared with the Court's

4   construction of these terms.  Assuming, *arguendo*, that under the "mandate rule" the

5   Federal Circuit's expressly or implicitly resolved the question of infringement of

6   claim 8, this Court's further construction of these claims based on the reexamination

7   represents new evidence since the remand or a change in circumstances so as to

8   invoke the exceptions to the mandate rule.  *U.S. v. Cuddy,* 147 F.3d 1111 (9th Cir.

9   1998), cited by Plaintiff in its claim construction briefing in support of the rule and

10  responded to in kind by Juggernaut, allows the district court in its discretion to

11  apply an exception if one of the exception conditions are met.  *Id.* at 1114.

12         The Court's construction of MCB, UTB and bar, which apply to claim 8 and

13  the rest of the claims asserted by Plaintiff, are effectively an application by the

14  Court of the exception to the mandate.  Indeed, the Court was correct to enter

15  constructions narrowing these claim terms.  But the only change in the record that

16  would support the narrower constructions were the reexaminations.  For the

17  prosecution record in the second reexamination to support these constructions, the

18  Court *must* have found these to be a clear disavowal of claim scope.  *Phillips v.*

19  *AWH Corp.* 415 F.3d 1303, 1317 (Fed. Cir. 2005)("the inventor limited the

20  invention in the course of prosecution, making the claim scope narrower than it

21  would otherwise be.").  Otherwise, the Court would have left UTB and bar as

22  construed according to plain and ordinary meaning, and MCB as only including an

23  OEM.  There was no other change to the intrinsic record of the '845 Patent other

24  than the reexamination record.  Thus, on the one hand, the Court saw fit to change

25  the scope and construction of all of the asserted claims, including claim 8, based on

26  Plaintiff's disavowal of claim coverage.  Yet, on the other hand, the Court has

27  foreclosed Juggernaut from defending the infringement claims lodged against it

28  based on this construction.

4

1    Moreover, Juggernaut must challenge the validity of the '845 Patent claims,

2  including claim 8, based on these narrower constructions, but these narrower

3  constructions are not part of the infringement consideration of claim 8. A patent

4  claim must be construed in order to determine whether it complies with the

5  requirements of patentability. It is axiomatic that a claim must be interpreted the

6  same way in determining infringement and invalidity for it would be fundamentally

7  unfair to give a claim a narrow interpretation to uphold its validity over the prior art

8  and then give it a broad interpretation to establish infringement. *Data Engine Techs.*

9  *LLC v. Google LLC*, 10 F.4th 1375, 1381 (Fed. Cir. 2021)("[W]here, as here, a

10  patentee relies on language found in the preamble to successfully argue that its

11  claims are directed to eligible subject matter, it cannot later assert that the preamble

12  term has no patentable weight for purposes of showing infringement.").

13    Equally problematic is that under the ban of asserting non-infringement of

14  claim 8, the Court will apply the constructions of the claim 8 terms (MCB, UTB, bar

15  and device) as they left the Federal Circuit to the non-infringement analysis of

16  claims 9, 10, 22 and 23, which depend from claim 8, which are outside of the

17  mandate.  Also, the new constructions will apply to the prior art to determine if

18  these claims, including claim 8, are invalid.  This inconsistent application of claim

19  meanings for infringement and prior art violates fundamental principles of patent

20  law.  For this reason alone, the Court should reconsider its grant of Plaintiff's claim

21  8 motion to dismiss and deny the motion.

22    This is not only unfair but violates a basic tenet of patent law – that a claim

23  term be given the same meaning in each claim in which it appears.

24    As Juggernaut urged in its briefing, the Federal Circuit opinion in *Baxter v.*

25  *Fresenius USA. Inc. v. Baxter Int'l, Inc.* 721 F.3d 1330 (Fed. Cir 2013), stands for

26  the proposition that a Federal Circuit judgment on issues like patent invalidity is

27  trumped by an intervening contrary determination by the PTO when the court case

28  is not reduced by a final and appealable judgment.  See *Packet Intel, LLC v.*

5

*NetScout Sys.*, 100 F.4th 1378 (Fed. Cir. 2024)(Under *Fresenius* "the district court must apply intervening legal developments affecting the asserted patent's validity, even if the court of appeals already decided the validity issue the other way…because the appellate mandate had not ended the case.").  Throughout the briefing on the motion to dismiss or claim construction, Plaintiff offered no counter to the Federal Circuit controlling *Fresenius* authority.  Under *Fresenius,* therefore, the Court does not violate the mandate by applying intervening legal developments when the patent's validity was tested during reexamination even if the interim mandate resolved an issue.

Moreover, in its reply brief on the motion to dismiss, Plaintiff argued that the case of *Richtek Tech. Corp. v. uPI Semiconductor Corp.,* 2011 U.S. Dist. LEXIS 14095, No. 09-05659 (N.D. Cal. Feb. 3, 2011), cited by Juggernaut, is inapposite because, according to Plaintiff, the case is limited to situations where the reexamination *only* is relevant where the claims in reexamination were cancelled or amended.  But, as the *Richtek* court concluded, as Juggernaut cited repeatedly, "[e]ven if none of the asserted claims are amended, this action will be shaped by the richer prosecution history available to inform the claim construction process."  *Id.* at *8-9.  Plaintiff misstates *Richtek* as in that case the fruits of the reexamination at issue there were not yet determined.  Thus, for Plaintiff to argue that the Northern District of California case is not applicable here because claim 8 was not canceled or amended is simply wrong.

For the foregoing reasons, Juggernaut submits that reconsideration of the grant of Plaintiff's motion to dismiss Juggernaut's non-infringement counterclaims and defenses for claim 8 and denial of the motion is warranted.  The Court's construction of MCB, UTB and bar reflect (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to Juggernaut at the time the order was entered and (b) a manifest showing of a failure to consider material facts (the Court's claim

6

construction and the reexamination prosecution history on which it was based) before the Corut before the Order was entered.

## III.   THE COURT'S CONSTRUCTION OF "DEVICE" INVOKES PLAINTIFF'S NEW ALLEGATION OF CONTRIBUTORY INFRINGEMENT

In its Claim Construction order, the Court also ruled that the term "device" be given its plain and ordinary meaning.  This ruling necessarily goes outside of the Federal Circuit's mandate as the question of contributory infringement was not alleged by Plaintiff prior to its Amended Complaint of July 9, 2025. Doc. No. 243, ¶ 28.  This was the first appearance of a contributory infringement theory in this case.  Plaintiff's original complaint did not include a contributory infringement charge as the term appears nowhere in that complaint.  Thus, the Federal Circuit's mandate does not resolve the question of contributory infringement of claim 8.  Plaintiff conceded this point at the hearing of October 24, 2025.

This is another example of how the Court's grant of the motion to dismiss Juggernaut's noninfringement counterclaim and defense of claim 8 cannot be squared with the claim construction and mandate rule.  Even as Plaintiff concedes, the mandate neither explicitly or implicitly resolved the question of contributory infringement of claim 8.  When the court assigned a plain meaning construction to the term "device" based on the prosecution history of the second reexamination, the Court invoked contributory infringement as the theory of infringement against the Juggernaut accused Hellfighter kits.  This is because prior to the reexamination, there was no basis to deem "device" as part of the claim as the term resides in the claim's preamble.  In general, a claim term in the preamble is not limiting, unless through the intrinsic evidence (i.e., prosecution history), the preamble term gives life, meaning and vitality to the claim.  *Am. Med. Sys., Inc. v. Biolitec, Inc.,* 618 F.3d 1354, 1358 (Fed. Cir. 2010).

Although the Court in its claim construction order declined to address

7

whether the preamble is limiting, when it ascribed plain and ordinary meaning to "device" it treats the term as limiting.  As Plaintiff's arguments in the reexamination and the Examiner's reasons for allowing claim 8 demonstrate, the reason the patentability of claim 8 was affirmed by the Examiner is because claim 8 recites a device.

Juggernaut respectfully submits that the issue of whether the preamble term "device" is limiting was addressed in Juggernaut's Responsive Claim Construction brief, Doc. 262, p. 20-22, in response to Plaintiff's assertion that "device" in the preamble of claim 8 does not serve as a substantive claim limitation and it would be a "waste of judicial resources to construe such a generic term…."  Doc. 260, p. 23. Plaintiff's characterization notwithstanding, during reexamination the Examiner found "device" to be the difference between cancelled claim 1 and allowed claim 8. Regardless of the Court declining to adopt Juggernaut's proposed construction or 35 U.S.C. 112 treatment of "device", but giving it a plain and ordinary meaning, the Court made "device" part of the claim.  *See SFA Sys., LLC v. 1-800-Flowers.com, Inc.* 2011 U.S. Dist. LEXIS 87940, Civ. No. 6:09-cv-340 at *28 (E.D. Tex. Aug. 8 2011)("Although the preambles are limiting, they do not require construction.").

Making "device" part of claim 8 is certainly correct in view of the Examiner's finding that "device" made claim 8 patentable.  And as Juggernaut argued in its Responsive Claim Construction brief, this makes clear why Plaintiff's First Amended Complaint includes a count of contributory infringement of claim 8. There is no contributory infringement count of any other asserted claim.  Only claim 8.  Doc. 243, ¶¶ 28-30.

Even under the plain meaning of "device", there cannot even be an issue of material fact of whether Juggernaut's accused Hellfighter kit directly infringes claim 8.  It does not.  According to the Court's construction, claim 8 covers a device having a magazine catch bar and upper tension bar.  The accused Hellfighter kit does not include a magazine catch bar.  Plaintiff's infringement contentions confirm

8

this. The kit only includes what Plaintiff alleges is an upper tension bar. Thus, Plaintiff must rely on a contributory infringement theory to find Juggernaut liable for infringement. This was not encompassed in the Federal Circuit's mandate, explicitly or implicitly, as this theory of infringement was not yet introduced to the case.

The Court's assigning a plain and ordinary meaning of the claim 8 term "device" conflicts with the dismissal of Juggernaut's claim 8 non-infringement defenses. One commits contributory infringement by providing a material part of the invention that is not a staple article or commodity of commerce suitable for substantial non-infringing use. 35 U.S.C. 271(c). Contributory infringement requires an underlying direct infringer. *Refac International, Ltd. v. IBM,* 798 F.2d 459, 460 (Fed. Cir. 1986).

Under a plain meaning construction, claim 8 covers a "device" that comprises a UTB and MCB. Since it is undisputed that Juggernaut's Hellfighter kit is not a device that comprises a MCB, it only infringes, if at all, under an indirect infringement theory, such as contributory infringement.

Plaintiff agrees that contributory infringement was not before the Federal Circuit because that was not yet alleged by Plaintiff. In the reexamination the Examiner considered "device" limiting. The Court agreed that claim 8 is limited to a device, regardless of whether device is construed by its plain meaning, the meaning advanced by Juggernaut, or some other meaning. When the Court ruled on the motion to dismiss the claim 8 non-infringement defenses, it did not consider that it limited claim 8 to a "device" that includes MCB and UTB. This construction, like the construction of MCB, UTB and bar, narrows the scope of claim 8. Now, Juggernaut must apply this narrower construction of claim 8 to prior art to prove invalidity, yet the broader pre-examination construction applies to infringement, even though the question of contributory infringement is beyond the Federal Circuit mandate.

Even by applying a plain meaning construction of "device", the Court followed the Examiner's lead in the reexamination that because claim 8 recites a device, the claim's patentability was affirmed.  This conflicts with the dismissal of the claim 8 non-infringement counterclaims or defenses.  Now that claim 8 recites a device that includes both a MCB and UTB, Juggernaut's accused kits only infringe, if at all, on a contributory infringement theory.  Even though contributory infringement is alleged for the first time after the mandate and invoked by the Court's construction, Juggernaut is deprived of asserting non-infringement of claim 8.  Because the Court's order on the motion to dismiss fails to consider the materiality and impact of the claim construction order, Juggernaut requests reconsideration of the dismissal of the claim 8 defenses.

## IV.   THE CONSTRUCTION EFFECTIVELY APPLIED AN EXCEPTION TO THE MANDATE

Finally, by positively applying a construction to the claim terms MCB, UTB, and "bar" and ascribing plain and ordinary meaning to device, the Court effectively applied one of the exceptions to the mandate rule. Assuming, *arguendo*, that the Federal Circuit's treatment of claim 8 either explicitly or implicitly resolved *all* claim 8 infringement issues, including contributory infringement, the Court's construction of these terms is bottomed on Plaintiff's disclaimer of claim scope that occurred during the second reexamination.  The reexaminations occurred after the Federal Circuit appeal.  Plaintiff's representations and the Examiner's reliance on those representations during the reexamination are "new evidence" or "a change in circumstances" since the mandate that warrant an exception. *Cuddy,* 147 F.3d at 1114.

Juggernaut's proposed constructions of the various claim terms were based on Plaintiff's arguments made during the reexamination.   A patent claim term may be narrowed based on the patent's prosecution history, which is intrinsic evidence. *Phillips,* 415 F.3d at 1317.  As discussed, *supra*, although the Court did not adopt

10

the constructions of MCB, UTB, bar and device as proposed by Juggernaut, the Court nevertheless narrowed each of these claims from how they were construed prior to the Federal Circuit appeal. These narrower constructions could only have been based on the reexamination proceedings. As such, the Court treated the various Examiner-Patentee exchanges during the reexamination as "new evidence" or "a change in the circumstances" of the patent that warranted the Court's departure from the mandate.

While the claim construction order clearly evinced a departure by the Court from the claims as they left the Federal Circuit, the Court's dismissal of the claim 8 non-infringement defenses negates those constructions. In view of the tenets of patent law that (a) a single construction is to apply for infringement and invalidity; and (b) claims are to be given consistent constructions across the claims, Juggernaut requests that the Court reconsider its dismissal of the claim 8 non-infringement counterclaims and defenses and deny Plaintiff's motion to dismiss to permit equal application of the construed terms across all claims and for infringement and invalidity.

## V.    THE INEQUITABLE CONDUCT CLAIM AS TO THE SCHOENFELD REFERENCE SHOULD NOT HAVE BEEN DISMISSED

### A.    The Court Considered Evidence Outside of the Pleadings

"[A] district court commits reversible error when it considers matters extraneous to the pleadings while treating the motion as one to dismiss, rather than one for summary judgment". *Bonilla v. Oakland Scavenger Co.*, 697 F.2d 1297, 1301 (9th Cir. 1982). Plaintiff's motion included evidence outside of the pleadings, namely, Litigation Summary Documents (Doc. 240-2 at 121 and 145).

Juggernaut submitted an *Ex Parte* application arguing the motion should be treated as one for summary judgment. Juggernaut noted that Plaintiff provided documents outside of the pleadings. Doc. 247 at 2. Juggernaut also noted Plaintiff's conclusory and unsupported allegation that the documents were

11

1  "carefully considered." This statement was not supported by a declaration or other

2  corroborating evidence. Plaintiff's other statements such as the existence of "good-

3  faith alternatives such as counsel's judgment that certain prior art was cumulative or

4  immaterial" were also conclusory and not supported by any evidence. Juggernaut

5  sought an extension of time to conduct discovery on these statements, and the

6  outside documents produced by Plaintiff in its motion to dismiss.

7  Juggernaut's *Ex Parte* application, and request for discovery was denied. The

8  Court noted "[i]f Evolusion's motion relies on documents beyond the pleadings that

9  may not be properly considered at the motion-to-dismiss stage, the Court will either

10  (1) disregard the outside matters in its rulings, or (2) convert the Rule 12(b)(6)

11  motion to a Rule 56 motion and give Juggernaut 'a reasonable opportunity' to

12  present additional response." Doc. 249 at 2.

13  The Court neither disregarded the outside matters in its rulings nor gave

14  Juggernaut a reasonable opportunity to respond. The Court relied heavily on the

15  documents beyond the pleadings; the thrust of the Court's order relied upon the

16  documents. The Order stated "[t]he entire record from the District Court litigation,

17  including the Summary Judgment ruling, was before the PTO. (See generally,

18  Litigation Record, Doc. 240-2)." Doc. 274 at 11. The Order analyzes references in

19  the Litigation Record. The Court then relied on the Litigation Record, stating that

20  the "PTO would have been aware of the Schoenfeld Device and its importance." Id.

21  at 12.

22  The Court improperly relied upon the Litigation Record. The Court noted

23  that it would either disregard the document outside the pleadings, or give Juggernaut

24  an opportunity for discovery. If the Court were to rely upon this document,

25  Juggernaut should have been afforded discovery on this issue and an opportunity to

26  provide an additional response pursuant to Fed. R. Civ. P. 12(d). It is clear the

27  Court relied upon this document as it was cited throughout the Court's order.

28  If given the opportunity for discovery, Juggernaut can demonstrate that the

PTO did not consider the Schoenfeld Device ("Schoenfeld"). Juggernaut had discovery going to counsel's arguments on cumulative or immaterial statements since May 1, 2025, and Plaintiff refused to provide answers. Juggernaut instituted discovery conferences with Judge McCormick, who declined to require Plaintiff to answer the inequitable conduct discovery as a ruling on the motion to dismiss seemed imminent. Further, Juggernaut repeatedly attempted to depose the co-inventors as to inequitable conduct. Plaintiff repeatedly refused to allow these depositions to occur.[1] Plaintiff's discovery gamesmanship worked. Had Plaintiff provided substantive answers, Juggernaut would have been in a position to respond. However, Plaintiff delayed and drug its feet until after the order on the motion dismiss.

Regardless, since Plaintiff introduced documents outside of the pleadings, Juggernaut should be afforded discovery on this issue. The Court relied upon the documents outside of the pleadings in denying this claim, at the 12(b)(6) stage, with prejudice. Given that Juggernaut moved for an extension to conduct discovery, and the Court denied the extension stating it would not consider the documents, Juggernaut should be afforded a limited opportunity to conduct discovery on this issue. Failure to do so is reversible error. *See Bonilla*, 697 F.2d at 1301.

**B.    New Evidence Demonstrates that the PTO Did Not Consider Schoenfeld**

---

[1] In its initial disclosures Plaintiff stated that the co-inventors should be contacted through Plaintiff. Plaintiff refused to provide the co-inventors for deposition, and when Juggernaut noticed them, Plaintiff said it was unavailable and did not represent them. They admitted they did not have contact information for the co-inventors. Plaintiff conceded that it had not spoken with co-inventors since the original filing of the '845 Patent. This means the co-inventors were not contacted about the duty of disclosure during either reexamination. After representing for years that the co-inventors can be contacted through Plaintiff, and after goal-tending, Plaintiff sheepishly admitted it neither represented the co-inventors, nor even knew their contact information. Juggernaut has been unable to conduct any discovery on inequitable conduct.

13

In dismissing the claim of Inequitable Conduct for Plaintiff's failure to twice disclose Schoenfeld, the Court cited *Honeywell, Inc. v. Litton Sys., Inc.* for the proposition that an "applicant cannot intentionally withhold a reference **actually considered by the PTO**, even though the applicant may not have disclosed the art." 87 F.3d 1559, 1571 (Fed. Cir. 1996)(emphasis added).   The evidence attached demonstrates that the PTO never considered Schoenfeld.

As a threshold matter, it is worth noting that Schoenfeld is not a patent or printed publication which the Examiner can unilaterally find and locate by the patent number.  The Litigation Summary Document has only a high-level discussion of the device.  It has no figures, drawings, etc. of the device itself.  Because Juggernaut was precluded from bringing forth Schoenfeld during reexamination[2], the only way for the PTO to be fully appraised as to Schoenfeld was if Plaintiff submitted the device via an Information Disclosure Statement.  Juggernaut implored Plaintiff to do so, and Plaintiff intentionally disregarded this.  Plaintiff knows full well a quick reference to Schoenfeld in the Litigation Summary Document does not constitute a full disclosure. In fact, as shown below, the PTO's silence makes clear this was not a disclosure that it considered.

There is rebuttal presumption of validity over prior art considered by the PTO. Because of this, the PTO keeps records of prior art it considers.

Here, there were two separate reexamination proceedings.   In each reexamination, the PTO has documents which reflect prior art considered by the PTO. We do not have to guess whether the PTO considered a prior art reference.

Exhibit A is a document entitled "List of References cited by applicant and considered by examiner" for the first reexamination.   Exhibit B is the same document for the second reexamination.   As can be seen, both documents are signed by the

---

[2] Reexamination requests are limited to patents and publications only. Schoenfeld was prior art due to public usage and could not be raised by Juggernaut in its reexamination request.  However, the duty of candor compelled Plaintiff to bring this to the PTO's attention, even if Juggernaut could not.

14

1    Examiner. Neither document references Schoenfeld. This serves as conclusive proof
2    that Schoenfeld was not considered by the PTO. If it had, there would have been an
3    equivalent document listing the Schoenfeld Device and being signed by the Examiner.
4    Since there is none, the Schoenfeld Device was not considered by the PTO.

5          The case cited by the Court requires that the reference be "actually considered
6    by the PTO." Consideration requires actual consideration. In a similar case, a court
7    erred in finding inequitable conduct because the patents in question "were actually
8    cited by the PTO and considered during the '563 patent prosecution, were used to
9    reject pending claims. . . ." *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1185, 1995
10   U.S. App. LEXIS 2959, *38-39, 33 U.S.P.Q.2D (BNA) 1823, 1832. In that case, the
11   reference in question was used in rejecting the claim. Here, there is nothing in either
12   office action, notice of allowance, response to office action, etc. that references
13   Schoenfeld. There is nothing to demonstrate the PTO even saw any reference to
14   Schoenfeld. Certainly, there is no evidence to suggest, unlike in *Honeywell, Inc.* or
15   *Molins PLC* that the PTO actually considered the Schoenfeld Device.

16         Furthermore, aside from the "actually considered" requirement, there is no
17   proof that Schoenfeld was actually even before the PTO. In *Molins PLC*, the
18   reference was a patent. The Examiner can review the patent, and determine
19   materiality, patentability, etc. based upon review of the patent. Here, Schoenfeld was
20   not actually even before the PTO. While there were broad discussions, there were no
21   pictures, diagrams, illustrations, etc., of how Schoenfeld looked or functioned.

22         As an example, the Court cites page 124 of the Litigation Record as describing
23   the Schoenfeld Device. Doc. 275 at 11. This page has Juggernaut's argument that
24   Schoenfeld is "highly relevant." However, there are no pictures, videos, schematics,
25   etc., upon which an Examiner could find that the claims of the patent read on various
26   features of Schoenfeld. Is the Examiner supposed to reject a claim based on
27   Juggernaut's description of Schoenfeld? No, the Examiner must have possession of
28   the underlying reference itself. The Examiner did not here. Juggernaut's description

15

1    of the Schoenfeld Device would never be considered a disclosure of prior art.

2         Similarly, the Court cites to page 127 of the Litigation Summary which states

3    "the Schoenfeld Device, based on its alleged similarity in design and function to the

4    innovation disclosed in the '845 Patent, has the potential to be highly relevant to the

5    disposition in this matter." Doc. 274 at 11. The Court even references "alleged"

6    similarity. This cannot be said to be a full disclosure of Schoenfeld. It simply states

7    that Juggernaut believes it to be similar to the '845 Patent. A patent examiner could

8    not make a rejection based upon the Court's treatment of the "alleged similarity." As

9    such, this portion fails to amount to a disclosure of Schoenfeld. This page, like page

10   124 above, is devoid of any pictures, illustrations, etc. of the device itself.

11        The Manual for Patent Examination and Procedure (MPEP) 2256 provides

12   "[t]ypically, the primary source of prior art will be the patents and printed publications

13   cited in the request for ex parte reexamination." Thus, generally the Examiner only

14   considers what was provided in the request. MPEP 2256 states that where prior art is

15   submitted "the requisite degree of consideration to be given to such information will

16   be normally limited by the degree to which the party filing the information citation

17   has explained the content and relevance of the document. The initials of the examiner

18   placed adjacent to the citations on the form PTO/SB/08 or its equivalent, without an

19   indication to the contrary in the record, do not signify that the document has been

20   considered by the examiner any further than to the extent noted above."

21        The MPEP makes clear that the Examiner will initial form PTO/SB/08, or its

22   equivalent, if it has considered the reference. Exhibits A and B, referenced above,

23   are forms PTO/SB/08. To be "considered", Schoenfeld should be added to

24   PTO/SB/08 and initialed by the Examiner. As can be seen, both Exhibits A and B

25   are signed/initialed by the Examiner, but they do not include Schoenfeld.

26        Taken further, MPEP 2257 states that the "examiner must list on a form PTO-

27   892, if not already listed on a form PTO/SB/08 or PTO/SB/42 (or on a form having

28   a format equivalent to one of these forms), all prior art patents or printed

16

1    publications which have been cited in the decision on the request, applied in making

2    rejections or cited as being pertinent during the reexamination proceedings." The

3    Schoenfeld Device is not listed anywhere on any such forms. As such, the

4    Schoenfeld Device was not "considered" by the Examiner or PTO during either

5    reexamination.

6        Finally, MPEP 2257 continues that "[a]ll citations listed on form PTO-892,

7    and all citations not lined-through on any form PTO/SB/08 or PTO/SB/42 (or on a

8    form having a format equivalent to one of these forms), will be the **list of prior art**

9    **documents considered** in the reexamination proceeding." (Emphasis added). The

10   Schoenfeld Device is not on any of these forms. Thus, according to the PTO, the

11   Schoenfeld Device was not considered during either reexamination. The Court's

12   statement and reliance upon *Litton Sys. Inc.* in assuming that the PTO "actually

13   considered" the Schoenfeld Device is incorrect. According to PTO, the PTO did not

14   "consider" the Schoenfeld Device.

15       Finally, the Court's statement that "[t]he entire record from the District Court

16   litigation, including the Summary Judgment ruling, was before the PTO" is incorrect.

17   Doc. 274 at 11. The Litigation Summary Record is 187 pages. As of the time of the

18   reexaminations, there were over 200 pleadings. Many of these pleadings have 20 or

19   more pages. Juggernaut respectfully submits that it is incorrect to state that the entire

20   litigation record was before the PTO. The PTO had 187 pages which were mostly

21   docket summaries of several litigations. The PTO did not have benefit of the entire

22   litigation record.

23       Regardless, the point remains that the PTO made clear it did not consider

24   Schoenfeld. There is no evidence that the PTO considered Schoenfeld. In fact, the

25   evidence suggests that the PTO did not consider Schoenfeld. As such, dismissal of

26   the inequitable conduct claim as to Schoenfeld was improper. Juggernaut should at

27   least be afforded the opportunity to conduct discovery and re-plead.

28

**MEMO OF POINTS AND AUTHORITIES ISO OF JUGGERNAUT TACTICAL INC.'S MOTION FOR RECONSIDERATION**

1
2

**C.     Even if the Litigation Summary Is Considered, That Only Applies to One of Two Reexaminations.**

3
4
5

Each separate reexamination constitutes a separate prosecution, to which a separate ground of inequitable conduct can attach. Juggernaut has alleged that Schoenfeld was not disclosed in either reexamination.

6
7
8
9
10
11
12
13
14
15
16
17

In its motion, Plaintiff submitted the Litigation Search Report for the second reexamination. Doc. 240-2. Even if the Court accepts this as a disclosure of Schoenfeld, which Juggernaut disputes, this disclosure only applies to the second reexamination. This does nothing to negate the inequitable conduct in the first reexamination which took place before the second reexamination. These are stand-alone counts. If the Court gives the Litigation Search Report any consideration it should be limited to the second reexamination only. The stand-alone count of inequitable conduct for the first reexamination remains. Even a proper disclosure in the second reexamination does not un-ring the inequitable conduct bell of first reexamination. Even if the Court considers this document provided outside of the pleadings, its application extends only to the second reexamination, and does not impact the allegations as to the first reexamination.

18
19
20
21
22
23

Note there is a similar Litigation Search Report in the First reexamination. However, this was not provided to the Court. Plaintiff knew that providing multiple documents outside of the pleadings would immediately be rejected and convert the motion to dismiss into one for summary judgment. In sum, the evidence in the record thus far only applies to the second reexamination. There is zero evidence before the Court that the PTO in the first reexamination was aware of, or considered, Schoenfeld.

24
25

**VI.   THE INEQUITABLE CONDUCT CLAIM AS TO THE "INVENTION IS" STATEMENT**

26
27
28

The Court stated it is "unclear that Plaintiff made any contradictory statements before the PTO." Doc. 274 at 9. Respectfully, the Court misapplied the facts, and allowed a claim construction argument to undermine the reasoning.

18

1    Before the Federal Circuit, Plaintiff argued that the "paragraph that the
2    'invention is' sentence appears in describes part of the method invention of claim 15,
3    not the product inventions of claim 1 and 8." Reply Brief for Appellant Evolusion
4    Concept, Inc. 2021-1963 at 5. On appeal, Plaintiff argued "the invention is" apply to
5    the method claims – they do not apply to the product of claims 1 and 8.

6    Then, when all claims in the reexamination stood rejected at the PTO, Plaintiff
7    makes the opposite argument to distinguish its rejected claims from the prior art. It
8    argued that the MCB and UTB "work together". When you make an argument before
9    the PTO, you must provide support in the patent for that argument. As support for
10   the "work together" argument, Plaintiff cites "'845 patent at col. 2:54-55." See
11   Exhibit C, Response to Office Action at p.5. The only support provided by Plaintiff
12   to the PTO for the "work together" argument, is the same sentences Plaintiff
13   previously said only applied to the method of claim 15. This is critical. Plaintiff had
14   to provide support for its arguments – otherwise it would not have been accepted.
15   The ONLY support for the "work together" argument of claim 8, were the exact same
16   sentences which previously did not apply to claim 8.

17   Plaintiff's "work together" argument was accepted by the Examiner. The
18   Examiner even cited "interplay" in the reasons for allowance, which certainly sprang
19   from the "work together" argument. See Exhibit D, Notice of Allowance. Exhibit D
20   is new evidence not previously before the Court on the Motion to Dismiss. This
21   evidence was not previously provided because the indication was that the document
22   outside of the pleadings would not be considered. This new evidence, specifically the
23   Examiner's citation of "interplay" shows the materiality of the "work together"
24   argument. We do not have to guess if it is material – the Examiner notes the "work
25   together" argument was material. Claim 8 survived because of this argument.

26   The inconsistent statement is clear. The invention is language did not apply to
27   claim 8 at the Federal Circuit but then did apply to claim 8 at the PTO. The entire
28   "work together" argument is built upon the invention is language for support. If the

19

MEMO OF POINTS AND AUTHORITIES ISO OF JUGGERNAUT TACTICAL INC.'S MOTION
FOR RECONSIDERATION

Examiner knew that Plaintiff had previously argued the sole support for the "work together" argument excluded claim 8, there is zero chance the Examiner would have accepted this argument. Keep in mind, all claims were rejected at this point. It was in complete reliance on this statement, that the claims survived.

When the Court says the reason for allowance was not "based on the 'invention is' language", respectfully, this is an incorrect interpretation of the facts. The Examiner recites "interplay", and the only support provided by Plaintiff for "interplay" was "the invention is" language. *See* Exhibit D, p. 2. When the Examiner cites "interplay" in the notice of allowance, the Examiner is basing the term "interplay" on the "invention is" language for support. Again, all claims were rejected. Plaintiff made the work together/interplay argument based on the "invention is" language. The Examiner accepted this argument, built on the "invention is" language, and even cite the term "interplay" in the reasons for allowance. The reason for allowance is built entirely upon the "invention is" sentence. The entire work together/interplay argument is built upon the "invention is" sentences. Examiner's reliance upon "invention is" sentences, now inconsistently applied to claim 8, was material to the allowance. Juggernaut should, at a minimum, be granted leave to better tie the materiality of "invention is" language to the reasons for allowance.

## VII. CONCLUSION

For the foregoing reasons, Juggernaut's Motion for Reconsideration should be granted. The order dismissing with prejudice the non-infringement defense and counterclaim concerning claim 8 should be reversed. Further, the dismissal of the identified claims of inequitable conduct should be reversed, and Juggernaut should be granted an extension of time to conduct discovery on these claims as well as leave to replead these claims.

Dated: November 19, 2025            By:/s/ Uleses C. Henderson, Jr.

Bobby W. Braxton

20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*-and-*

 Gregory Perrone

*-and-*

**ONE LLP**
Uleses C. Henderson, Jr.

Attorneys for Defendant and
Counterclaimant,
JUGGERNAUT TACTICAL, INC.

**MEMO OF POINTS AND AUTHORITIES ISO OF JUGGERNAUT TACTICAL INC.'S MOTION FOR RECONSIDERATION**

# LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant/Counterclaimant, JUGGERNAUT TACTICAL, INC., certifies that this brief contains 6,847 words, which complies with the word limit of L.R. 11-6.1.

Dated: November 19, 2025

                                            By: /s/ Uleses C. Henderson, Jr.

                                            Uleses C. Henderson, Jr.

---

**CERTIFICATE OF COMPLIANCE**